# Richmond.

RICHMOND RAILWAY & ELECTRIC CO. v. WEST,

January 30, 1902.

Absent, Buchanan, J.

1. PLEADING—*Allegation and Proof—Variance.*—Whatever latitude may be allowed in charging negligence, a plaintiff will not be allowed to charge one ground of negligence in his declaration and recover on another. The allegation and proof must correspond.

2. APPEAL AND ERROR—*Variance Between Allegation and Proof—Case at Bar.*—Variance between the allegation and proof cannot be taken advantage of for the first time in the appellate court, but, in the case at bar, the variance was passed upon in the trial court by excluding evidence of other grounds of negligence than those charged in the declaration.

Error to a judgment of the Circuit Court of Henrico county, rendered October 29, 1900, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Martin & Ainslie* and *Christian & Christian*, for the plaintiff in error.

*Henry R. Pollard* and *E. M. Long*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The main question in this case lies within narrow limits. The action was brought to recover damages for personal in-

juries alleged to have been occasioned the defendant in error, a lad thirteen years and two months of age, by the negligence of the plaintiff in error. The jury returned a verdict for the plaintiff, which the trial court, on motion of the defendant, refused to set aside, and rendered judgment upon the verdict. That judgment is now here for review.

The accident happened December 29, 1897, at which time the defendant company was operating an electric railway in the county of Henrico, and city of Richmond, passing from Mulberry to Strawberry street, and thence into the city of Richmond. There was a passenger shed on Beverly street, at its terminus near the lake at the New Reservoir, where the cars were accustomed to stop. Plaintiff's home was situated on Beverly street, about three and a half squares from the passenger shed referred to. On the morning in question, between six and seven o'clock, the plaintiff went to reservoir lake to ascertain whether the ice was thick enough to skate on. After examining the ice, he determined to return to his home for another pair of shoes, and accordingly boarded a car of the defendant then standing at the passenger shed, and about to proceed on its trip towards Richmond. It appeared that the plaintiff was in the habit of riding upon the defendant's cars, but had never ridden upon that particular car. After the car started, the plaintiff stood, for some distance, upon the front platform by the side of the motorman, and when the car was in about a square of his home, he stepped from the platform down upon the foot board of the car. He had ridden in this position some twenty-five or thirty feet when, in some way, he fell from the car and was run over, receiving injuries, which necessitated the amputation of his left leg.

There were four counts in the declaration. The negligence charged in the first and second counts was: That when the car began to move the employees of the defendant negligently permitted the plaintiff, an infant of tender years and without dis-

cretion, to stand upon the step on the right side of the front platform of the car, without warning him of his danger, or making any provision for his safety; that the company had negligently permitted the foot-board or step to remain covered with ice, and in a slippery and dangerous condition; that while the car was being run at its highest rate of speed, plaintiff slipped and fell from the car, and sustained the injury complained of.

The allegations of the third and fourth counts are substantially the same as those of the first and second counts, except that the charge in relation to the accumulation of ice on the foot-board is omitted.

There was a failure to sustain the allegation that the defendant had permitted the accumulation of ice on the step of the car. The only evidence tending in that direction was the statement of the plaintiff that the step was slippery, either from frost or ice, he could not tell which. The testimony of the motorman was that there might have been some frost on the step, but he did not think there was any ice, assigning as a reason that the car stayed in the shed over night.

There is a substantial difference between the allegation, that the company negligently permitted the plaintiff, being an infant of tender years and without discretion in the premises, from the time he first boarded the car until the accident, to ride on the step or foot-board, and the testimony of both the plaintiff and the motorman in that regard. From the evidence of both, it appears that the plaintiff rode on the front platform until he had gotten within a square of his home, where it was the purpose of the motorman to stop the car and let him get off; then it was, that he stepped down on the foot-board for the purpose of leaving the car. He rode on the platform until within twenty-five or thirty feet of the place where the accident occurred. The plaintiff and motorman both testified that he had too firm handholds while he was standing on the foot-board; and the latter stated that he had no reason, therefore, for supposing that plaintiff was not entirely safe.

The declaration did not allege that the car was being run at an unlawful rate of speed, and there was a failure to prove the charge that it was being run at its highest rate of speed, unless, indeed, the incidental remark of the plaintiff that it was running at full speed may be so construed. The motorman's testimony was that it was running seven or eight miles, the usual and lawful rate of speed.

As has been remarked, the plaintiff was thirteen years and two months old. His testimony shows that he was a bright and intelligent boy; that he resided on a street over which the railway passed, and had been accustomed to ride on the cars; also, that he had been told by his parents that it was dangerous.

It can hardly be predicated of such a boy, that he was an infant of tender years and without discretion. The fact that this deplorable disaster befell him does not *per se* sustain that theory, for it is matter of common observation that mature and experienced men are, at times, victims of similar accidents. Whatever may be said of the grounds of action set out in the declaration, it is clear, from the plaintiff's own version of how the accident occurred, that none of them was the proximate cause. His account of it is that the car was jostling and bouncing furiously on account of the track being in bad condition; that the step was coated with frost, "and as it was, I lost my balance by the car jolting, and fell off." In addition to the alleged slippery condition of the step from frost or ice, that the step was iron, and when new, was coated with rubber to keep it from being slippery. Continuing, he said: "My skull right here was fractured, and I always accounted for that being fractured by being knocked out of my senses before I fell off the car—the only way I can account for it being done. Something must have cut my skull and fractured it, and I must have been knocked out of my senses. That is the only reason I fell, and the car jolting was the cause of it being cut. I must have fallen up against the front or back part of the car, and had my head cut right then."

"I think something must have struck me and knocked me senseless, or I wouldn't have fallen off."

It is apparent that the proximate cause of the accident, as here detailed, is in no wise alleged in either count of the declaration. It makes an essentially different case, and for that reason was objected to by counsel for the defendant. The court permitted the statements to be made, but coupled with the reservation that they would be dealt with later; and subsequently, made the distinct avowal that no statement as to the condition of the track was admissible as evidence unless charged in the declaration.

The effect of this ruling was to eliminate from the case the theory and testimony of the plaintiff, as to the proximate cause of the accident, and left *no evidence* to sustain the verdict.

Counsel for the plaintiff insisted in argument, and cited authorities to sustain the familiar principle, that a variance between the allegations of a declaration and the proof cannot be availed of for the first time in an appellate court. The contention is based upon a misapprehension of the facts. As has been seen, the objection was not only made in the trial court, but was sustained, so that in point of fact it was not made here for the first time.

It was also argued that great latitude is allowed in charging negligence, and that a general allegation on that subject is all that is required. However that may be, the rule invoked is inapplicable to a case in which there has been a material departure in the testimony from the allegations of the declaration.

The function of a declaration is to inform a defendant of the nature of the demand made upon him; and that purpose would be defeated if it were permissible to allege one case and prove another.

In the case of *Eckles* v. *N. & W. Rwy. Co.*, 96 Va. 69, 71, the rule is stated thus: "The proofs must correspond with the allegations in the declaration, and the plaintiff must recover,

if at all, upon the case made by the pleadings. A party cannot charge one ground of negligence in his declaration and recover upon another. The object of a declaration is to set forth the facts which constitute the cause of action so that they may be understood by the defendant who is to answer them, by the jury which is to ascertain whether or not they are true, and by the court which is to give judgment." *Bush* v. *Campbell*, 26 Gratt. 431; *B. & O. R. Co.* v. *Whittington's Adm'r*, 30 Gratt. 810; 4 Min. Insts. 471-2; 1 Chitty Pl. 255, note.

Other interesting questions have been discussed in the case, but it is not necessary to consider them, as the judgment must be reversed for the error of the Circuit Court in overruling the defendant's motion to set aside the verdict as contrary to the law and the evidence. The cause will be remanded for a new trial to be had therein, in a manner not in conflict with the foregoing views; and with leave to the plaintiff, if so advised, to amend his declaration.

*Reversed.*