101  111|
102  172|

# Richmond.

PETTYJOHN v. NATIONAL EXCHANGE BANK OF LYNCHBURG.

January 15, 1903.

1. INSTRUCTIONS—*Construction of Written Instruments—Legal Effect.*—In an action on notes, an instruction which submits to the jury the legal effect of the notes is bad, as it is for the court and not for the jury to determine the legal effect of written instruments.

2. INSTRUCTIONS—*Abstract Propositions—Case at Bar.*—It is error to give an instruction which, though correct in the abstract, is under the pleadings inapplicable. In the case at bar the action being founded on notes and their indorsement, and not on the implied liability arising from the fact that a firm of which defendant was a member had received the proceeds, the following instruction was held inapplicable and misleading: "The court instructs the jury that when a partner of a trading partnership borrows money professedly for the firm, and executes therefor a negotiable instrument in the partnership name, it binds all the partners, whether the borrowing were really for the firm or not, or whether he diverts or misapplies the funds or not, provided the lender is not a party to the intended fraud; and the burden is not on the lender to prove value, or lack of knowledge of the fraud."

3. PLEADING—*Allegation—Proof—Suit on Express Contract—Proof of Implied Contract.*—In an action against a firm on the express promise evidenced by their notes and the indorsement thereof, there can be no recovery upon the implied promise arising from the use of the proceeds of the notes by the firm. The allegation and proof must correspond.

4. NEGOTIABLE PAPER—*Note of Firm—Partner as Payee—Forged Indorsement—Discount for Firm—Estoppel.*—If a negotiable note be made by a firm payable to one of its members, and the payee's name be indorsed on the note without his knowledge or consent, by another member of the firm, and the note be discounted for the firm and the money placed to its credit, the payee-member of the firm is not bound on the note either as joint maker or as indorser, nor is

he estopped to deny his liability. The form of the note is itself notice of a restriction on the powers of the other members of the firm to negotiate the note without the indorsement or consent of the payee-member. This is especially so where the party discounting the note knows that the payee in his individual capacity has theretofore been simply an accommodation indorser for the firm.

5. PARTNERSHIP—*Signing Firm Name—Signing Name of Co-Partner.*— While each member of a trading partnership may, as a general rule, bind his associates by signing the firm name, he has no authority, by virtue of the partnership relation alone, to bind a co-partner by signing his individual name to partnership paper.

6. ESTOPPEL—*Silence.*—Silence, to work an estoppel, must amount to bad faith, and this cannot be predicated of a transaction of which a party has neither knowledge nor means of knowledge.

Error to a judgment of the Circuit Court of the city of Lynchburg, rendered April 18, 1901, in a proceeding by motion for a judgment, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

As stated in the opinion of the court, this is a proceeding by motion, after notice to recover a judgment for money. The notice was in the words and figures following—to-wit:

"To W. J. Graham, J. W. Holloran, and Walker Pettyjohn, late partners, doing business under the firm name and style of Graham & Holloran, and to the said Walker Pettyjohn in his own right:

"Take notice, that on the first day of the April term next of the Circuit Court for the city of Lynchburg, the undersigned will move said court for judgment against you, and each of you, for the sum of three thousand, five hundred and fourteen 47-100 dollars ($3,514.47), with interest on $452.33, part thereof, from August 24, 1900; and on $402.33, another part thereof, from August 27, 1900; and on $176.33, another part thereof, from August 31, 1900; and on $651.33, another part thereof, from August 30, 1900; and on $486.33, another part thereof, from September 8, 1900; and on $426.33, another part

thereof, from September 10, 1900; and on $226.33, another part thereof, from October 12, 1900; and on $431.33, another part thereof, from November 13, 1900; and on $261.83, the residue thereof, from October 15, 1900, until paid; due by contract, and evidenced by the following negotiable notes made by the said firm of Graham & Holloran, payable to said Walker Pettyjohn, endorsed by him, and passed to the undersigned, and now held by it, viz.:

"One dated July 25, 1900, payable sixty days after date at the National Exchange Bank of Lynchburg, Virginia, for $750.00 and $2.33, costs of protest on same, subject to a credit of $300.00 as of August 22, 1900;

"One dated June 28, 1900, payable sixty days after date at the First National Bank of Lynchburg, Virginia, for $400.00, together with $2.33, the costs of protest on same;

"One dated July 2, 1900, payable sixty days after date at the First National Bank of Lynchburg, Virginia, for $175.00, together with $1.33, the costs of protest on same;

"One dated July 31, 1900, payable thirty days after date at the National Exchange Bank of Lynchburg, Virginia, for $650.00, together with $1.33, costs of protest on same;

"One dated August 9, 1900, payable thirty days after date at the National Exchange Bank of Lynchburg, Virginia, for $485.00, together with $1.35, costs of protest on same;

"One dated August 11, 1900, payable thirty days after date at the National Exchange Bank of Lynchburg, Virginia, for $425.00, together with $1.33, costs of protest on same;

"One dated August 13, 1900, payable sixty days after date at the National Exchange Bank of Lynchburg, Virginia, for $225.00, together with $1.33, costs of protest on same;

"One dated August 15, 1900, payable ninety days after date at the National Exchange Bank of Lynchburg, Virginia, for $430.00, together with $1.33, costs of protest on same;

"And one dated August 16, 1900, payable sixty days after date at the National Exchange Bank of Lynchburg, Virginia, for $590.00, together with $1.33, costs of protest on same, subject to a credit for $329.50, as of October 9, 1900.

"Respectfully,

"THE NATIONAL EXCHANGE BANK OF LYNCH-BURG,                                                    By Counsel."

Defence was made by plea of *nil debet*, which plea, with the affidavit thereto annexed, is in the following words and figures:

"And the said defendant, by his attorneys, comes and says that he does not owe the said sum of money in said notice of motion mentioned, nor any part thereof, and that he did not undertake or promise to pay the same, or any part of it, in manner and form, as the said plaintiff avers. And of this he puts himself upon the country.

HARRISON & LONG, p. d.

Virginia, City of Lynchburg, to-wit:

"I, Henry A. Minor, Jr., a notary public in and for the city aforesaid, in the State of Virginia, hereby certify that Walker Pettyjohn personally appeared before me in my said city and made oath as follows:

"1. That the matters and things stated in the foregoing plea are true, as he verily believes.

"2. That he did not make, sign, or endorse the notes described in said notice.

"3. That he did not in any way authorize any person for him to make, sign, or endorse the same.

"4. That there was, as he verily believes, no co-partnership, joint concern, or venture between him and any person who made, signed, or endorsed the said notes or authorized the

making, signing, or endorsing the same, in respect to which the same was made, signed, or endorsed.

"Given under my hand this 10th day of April, 1901.

"HENRY A. MINOR, JR., N. P."

*Harrison & Long,* for the plaintiff in error.

*Caskie & Coleman,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is a motion by the National Exchange Bank of Lynchburg against W. J. Graham, J. W. Holloran, and Walker Pettyjohn, late partners as Graham & Holloran, and the said Pettyjohn individually, to recover judgment on certain negotiable notes, signed Graham & Holloran, payable to the order of Walker Pettyjohn, and purporting to be indorsed by him.

The notes were delivered by Holloran to the bank for discount, and the proceeds were placed to the credit of Graham & Holloran. W. J. Graham and J. W. Holloran made no defence, and judgment by default was rendered against them.

Pettyjohn filed a plea of *nil debet,* accompanied by an affidavit denying that he had signed or indorsed the notes, or that he had authorized any other person to sign or indorse them for him; or that there was any copartnership between him and any person who signed or indorsed, or authorized the signing or indorsing of the notes.

There was a verdict for the bank, which Pettyjohn moved the court to set aside as contrary to the law and evidence, but the motion was overruled, and judgment rendered for the plaintiff, and the case is here upon the writ of error to that judgment.

There was evidence tending to prove: That prior to February 19, 1898, W. J. Graham and J. W. Holloran had conducted the business of building contractors under the firm name of Graham & Holloran; that on that date Pettyjohn entered into

a written contract with them for the manufacture and sale of brick under the same firm name. The new firm was without capital, and it was understood that Pettyjohn would aid it, as he had frequently aided the old firm, by indorsing notes which the firm would make payable to his order. That on May 1, 1899, Graham & Holloran opened an account with the bank, and thereafter notes of the partnership payable to Pettyjohn were indorsed by him, and discounted by the bank. Holloran, as managing partner, negotiated these transactions. On July 30, 1900, the partnership was terminated by a sale of Pettyjohn's interest to his associates. The notes which are the subject of this controversy were made after the dissolution of the partnership, and without the knowledge or consent of Pettyjohn; and, without his knowledge or consent, his name was indorsed upon the notes, and they were taken to the bank and discounted, and the avails passed to the credit of Graham & Holloran. At the time the bank discounted the notes, it had no notice of the dissolution of the firm. At the trial, Pettyjohn offered the following instructions, which the court refused to give:

I.

"The court instructs the jury that if they believe from the evidence that the defendant, Pettyjohn, was a member of the firm of Graham & Holloran, but that by the terms of the notes in suit, and the course of dealing between said firm and the plaintiff, the execution of said notes was not complete as to said Pettyjohn until they were indorsed by him, the said Pettyjohn cannot be held liable in this suit unless he indorsed said notes, and, if the jury believe from the evidence that said Pettyjohn did not indorse them, they must find in his favor."

II.

"The court instructs the jury that if the plaintiff is entitled to recover in this action, such recovery must be by virtue of the

notes sued on, and not by virtue of any contract that might be implied from the application of the proceeds of the said notes."

The bank offered four instructions, which were given by the court. The correctness of instructions II. and III. is conceded; the others are as follows:

### I.

"The court instructs the jury that when a partner of a trading partnership borrows money professedly for the firm, and executes therefor a negotiable instrument in the partnership name, it binds all the partners, whether the borrowing were really for the firm or not, or whether he diverts or misapplies the funds or not, provided the lender is not a party to the intended fraud; and the burden is not on the lender to prove value, or lack of knowledge of the fraud."

### IV.

"The court instructs the jury that if they believe from the evidence that the notes in suit were discounted by the plaintiff bank for Graham & Holloran; that the defendant, Walker Pettyjohn, was then a member of that firm; that said firm got from the bank the net proceeds of said notes; that the said notes, at the time they were so discounted and delivered to the bank, were indorsed in the name of said W. Pettyjohn, then the said Pettyjohn is liable, notwithstanding the indorsement of his name as aforesaid may be a forgery."

The refusal of the court to give the instructions asked for by Pettyjohn, and giving instruction I. and IV. at the instance of the bank, is assigned as error.

The vice in defendant's instruction No. I. is, that it submits to the jury the question of the legal effect of the notes sued on, and no rule is better established than that it is the province of the court, and not of the jury, to construe and determine the legal effect of written instruments. There was no error, there-

fore, in refusing that instruction. *New River Mineral Co.* v. *Painter*, 100 Va. 507, 42 S. E. 300.

Plaintiff's instruction No. I.. while a correct exposition of the principle enunciated, was, under the pleadings, irrelevant and calculated to mislead the minds of the jury from the issue they were sworn to try, and the rule, in such case is, that it is error to give an instruction, which, though not erroneous, is inapplicable and misleading. *McCoy* v. *N. & C. R. Co.*, 99 Va. 132, 37 S. E. 788.

It will be observed, that this motion is founded upon the contract evidenced by the notes and their indorsement, and is not an action upon the implied liability arising from the fact that the money received from the bank was placed to the credit of Graham & Holloran, and applied to the use of that firm.

The bank having sued on the *express promise* evidenced by the notes and their indorsment, cannot recover upon the *implied promise* arising from the use of the proceeds of the notes by the firm. *Manufacturers' Bank* v. *Gore* (Mass.). 8 Am. Dec., pp. 84-5.

The object of defendant's instruction No. II. was to illustrate that distinction. It correctly expounds the law, and ought to have been given. The principle invoked is not technical but substantial, and involves the familiar rule of pleading and evidence that the allegations and proofs must correspond, and that a plaintiff must recover, if at all, upon the case made by the pleadings. *Richmond Rwy. & Elec. Co.* v. *West*, 100 Va. 184, 40 S. E. 643, and authorities cited. *Malcomson* v. *Clayton*, 15 English R. 74.

Instruction No. IV. told the jury that if they believed from the evidence that the notes sued on were discounted by the bank for Graham & Holloran, that Pettyjohn was a member of the firm, that the firm got the net proceeds of the notes, and that the notes, at the time they were discounted and delivered to the

bank, were indorsed with the name of Pettyjohn, he is liable notwithstanding the indorsment of his name was a forgery.

The notes were drawn by the firm. and made payable to a member of the firm or order  They were the same in legal effect, therefore, as a note made by a person payable to himself or order, and such an instrument is invalid and inoperative until indorsed by the maker.   When so indorsed, it becomes payable to bearer, or to the indorsee or order, according to the terms of the indorsement  Such a note can take effect only when indorsed and delivered by the maker.   1 Daniel on Neg. Inst., sec. 130; *Smalley* v. *Wright* (Me.), 69 Am. Dec. 112; *Dubois* v. *Mason* (Mass.), 34 Am. Rep. 335; *Pickering* v. *Cording* (Ind.), 47 Am. Rep. 145; *Hall* v. *Burton* (Ill.), 81 Am. Dec. 310; *Scull* v. *Edwards* (Ark.), 56 Am. Dec. 294; *Norfolk Nat. Bank* v. *Griffin* (N. C.), 22 Am. St. Rep. 868, 11 S. E. 1049.

"A note signed by a firm, payable to a member of the firm, is not a good legal contract, for the obvious reason that the payee cannot sue himself (at law); but such a note becomes a good legal contract when indorsed.   It is like a note payable to one's own order, which though till indorsement is not a good legal contract, becomes such by the indorsement."   *Pitcher* v. *Barrows* (Mass.), 28 Am. Dec. 306; *Cutting* v. *Daigneaw* (Mass.), 23 N. E. 389; 1 Dan. on Neg. Inst., sec. 354.

The notes in question on their face informed the bank that Pettyjohn was a party to them in *his individual capacity*, and that his indorsement was essential to infuse vitality into the notes and to impose individual liability upon him; and that information was accentuated by the previous dealings of the parties in respect to the same character of paper.

"The fact that a note was presented for discount by the maker has been held notice to the discounter that an indorsement thereon was for accommodation."   1 Daniel on Neg. Inst., sec. 795 a.

The testimony of the cashier shows that he was familiar

with that principle, and regarded Pettyjohn as an accommodation indorser for Graham & Holloran. That it was his invariable custom to require *his indorsement* to the notes of the firm, and that he would not wittingly have discounted the paper without such indorsement. It further appears that it was the habit of the bank to protest the notes at maturity, unless protest was waived by Pettyjohn, or unless a check was deposited by the makers as a guarantee that he would indorse renewals.

So that, it is apparent that the bank understood Pettyjohn's relations to these notes, and dealt with him "at arms length," as it would have dealt with any other indorser for the accommodation of the firm.

While each member of a trading partnership has, as a general rule, implied authority to bind his associates by signing the firm name, he has no authority, by virtue of the partnership relation alone, to bind a copartner by signing his individual name to partnership paper. This doctrine is illustrated by the following quotation from a decision of the Supreme Court of Georgia in a case identical in principle with the one under consideration:

"But the payee did not indorse, and the person who did indorse, though a partner of the payee, did not indorse in the partnership name or in his own name, but in the name of the payee (the payee being his partner); and this he did without any authority further than the general implied authority of the partnership relation. The partnership had an established partnership name which was quite different from the name of the individual partner to whom the note was payable. The agency of a partner to sign for the partnership is generally restricted to signing in the established partnership name, when the partnership has such a name. Let it be conceded that the note was partnership property, and that the partner who transferred it had a right to transfer it, we think that without some special authority from the payee, he could not indorse it in the name of the latter, and put it afloat with all the incidents of negotiable paper

transferred before due; and if he could not do this, the words
'or bearer,' had they been genuine, would or might have varied
the rights of the holder, and made these rights more compre-
hensive; and whatever might or would have had that effect can-
not be treated as immaterial.    There is a public policy to be
subserved in guarding the purity and integrity of negotiable
paper, and neither surreptitious interpolations in the body of
the instrument, nor the indorsement by one man with the name
of another ought to be countenanced as a strictly commercial
transaction in a doubtful case."    *McCauley* v. *Gordon*, 37 Am.
Rep. 68.

The statute law of the State, which is merely declaratory of
the pre-existing doctrine of the law merchant, defines the lia-
bility of a person upon an instrument to which his signature has
been forged.

"Where a signature is forged, or made without the authority
of the person whose signature it purports to be, it is wholly
inoperative, and no right to retain the instrument, or give a dis-
charge therefor, or to enforce payment thereof against any
party thereto, can be acquired through or under such signature
unless the party against whom it is sought to enforce such right
is precluded from setting up the forgery, or want of authority."
Neg. Inst. Law, Art. I., sec. 23.    (Acts 1897-'8, p. 896.)

If, therefore, Pettyjohn is to be held liable on these notes it
must be on the ground that he has precluded himself from set-
ting up the forgery, or want or authority.

As a general rule, the doctrine of estoppel is not applicable
except in cases where the person against whom it is invoked has
by his representations or conduct, misled another to his injury,
so that it would be a fraud to allow the true state of facts to be
proved.    *Taylor* v. *Cussen*, 90 Va. 40, 17 S. E. 721.    Conced-
ing that Pettyjohn's failure to inform the bank of his with-

drawal from the firm of Graham & Holloran, left his responsi-
bility *as partner* uimpaired, it did not increase his responsibility.

A representation or concealment to operate an estoppel must
be made with knowledge of the facts by the party to be estop-
ped, unless his ignorance is the result of negligence..

For an estoppel to arise from silence, the person upon whom
the duty to speak rests must have an opportunity to speak, and
knowledge of the circumstances requiring him to speak. In
other words, his silence must amount to bad faith; and that, of
course, cannot be predicated of silence in regard to a transac-
tion of which one has no knowledge, or means of knowledge.

Pettyjohn being ignorant of the existence of the notes and
forged indorsement, of course did no act which induced the bank
to believe his signature genuine. It cannot be said, therefore,
that he has misled the bank, or has been guilty of the omission
of any duty in respect to it, that ought to estop him from set-
ting up the forgery under the statute.

In discussing the defences against which a *bona fide* holder of
negotiable paper is not protected, Mr. Daniel says: "So where
the party has never in fact signed the instrument as it then
stands, as, for instance, where it was forged in its inception, and
is not genuine, or was subsequently materially altered. In
such cases the *bona fide* holder cannot enforce it, for the defend-
ant has only to say: 'This is not my contract, *non hæc in fœdera
veni.*' So, if executed by one acting as agent of the principal,
but exceeding his authority, the *bona fide* holder cannot recover
unless the principal were in fault in inducing him to believe
that the agent had authority." 1 Daniel on Neg. Inst., sec. 809.

The case does not fall within the principle of what seems to
be the established doctrine, that the makers of a negotiable in-
strument, who negotiate it with the forged name of the payee
indorsed upon the note, will be held to warrant the genuineness
of the signature (Such instrument has not the inherent in-
firmity of a note made by a person payable to himself or order,

or of a firm payable to one of its members or order, which requires the indorsement of the payee to give it vitality, *but is a complete instrument*).

Having issued such an instrument as genuine in· all respects, it would be unjust and fraudulent upon others to permit the makers to deny it; and proof of their having so issued it would be sufficient to enable the holder to recover against *them.*    2 Daniel on Neg. Inst., sec. 1354.

But the liability of a firm on a note which *is forged in its inception* presents an essentially different question, as does the liability of a payee whose name is forged.

When the instrument is incomplete, and requires the indorsement of the payee to consummate it, and constitute it a good legal contract, and the payee's signature is forged, it is an infirmity which inheres in the *factum* of the instrument, and by the terms of the statute renders it inoperative; and this is true, under the authorities, even in the hands of a *bona fide* holder for value.

And the circumstance that the payee, whose name is forged, is a partner in a firm, another member of which forges his signature and puts the paper afloat, does not cure the defect.    Admittedly his associate has no authority, arising out of the partnership relation alone, to bind him individually.    So that the essential elements from which individual liability can arise, prior authority to indorse or subsequent ratification of the indorsement, are both lacking.

It would be indeed a curious result, if one whose signature has been forged to the indorsement of a note payable to himself or order, of the existence of which he had no knowledge, could be held bound upon the indorsement when the paper was negotiated by the forger, likewise without his knowledge, albeit they may happen to be members of the same firm.

The rule adverted to, that a partner, by virtue of the partnership relation, has no authority to bind a copartner by signing

his individual name, would be of little value, if by taking one other unauthorized and wrongful step—namely, negotiating the paper—he could estop his partner from setting up the forgery. Indeed, until the paper is negotiated the forgery is harmless; and to deny the party who has been victimized the right to make defence after it has become harmful would practically annul the rule.

Counsel for the bank insist that upon the whole testimony the jury would have been justified in believing that Pettyjohn indorsed the notes.    However that may be, the instruction complained of withdrew that question from their consideration.

Authority has been adduced to sustain the contention that Pettyjohn is liable upon *an implied assumpsit* to refund to the bank the proceeds of the notes of which his firm received the benefit    But, as has been remarked, if such liability exists, as to which no opinion is expressed, it cannot be enforced in this form of action.    *Malcolmson* v. *Clayton*, 15 Eng. R. 74.

It follows from these views, that the trial court erred in giving plaintiff's instruction No. IV.

The remaining assignment of error is to the refusal of the court to set aside the verdict of the jury as contrary to the evidence.

As a new trial will have to be  granted on other grounds, it is unnecessary to consider that assignment.

The judgment of the Circuit Court must be reversed and annulled, and the case remanded for a new trial to be had, not in conflict with the views herein expressed.

*Reversed.*