## Richmond

CLARENCE BOLLING, ET AL. v. GENERAL MOTORS ACCEPTANCE
CORPORATION.

January 14, 1963.

Record No. 5517.

Present, All the Justices.

The opinion states the case.

*S. H. Sutherland (S. H. & George C. Sutherland*, on brief), for the appellants.

*Bradley Roberts (Stant & Roberts*, on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

General Motors Acceptance Corporation, the complainant, filed a bill in equity under the provisions of Code, § 55-91, against Viking Coal Co., Inc., Clarence Bolling and Gary Neil Bolling, the defendants. The bill sought the enforcement of a conditional sales contract dated May 9, 1960, covering a 1960 Chevrolet truck, entered into between Beaty Chevrolet Co., Inc., and the defendants and assigned by Beaty to the complainant.

The chancellor heard the evidence *ore tenus* and entered a decree awarding judgment against the defendants in the sum of $7,272.60 and ordering the sale of the truck to satisfy the judgment if not paid within fifteen days. We granted the defendants an appeal.

The evidence discloses that in the spring of 1960, Gary Bolling, trading under the name of Viking Coal Co., Inc., a corporation not yet then formed, was associated with his father, Clarence, in the mining of coal in Wise County. The Bollings were interested in purchasing a truck to haul their coal from the mine to a tipple. They discussed such a purchase with a representative of the Beaty company and on April 14, 1960, signed an order for the purchase, from Beaty, of a Chevrolet truck.

Upon delivery of the truck, the conditional sales contract in question was executed by the Beaty company and the defendants. Under the terms of the contract, title to the truck was to be retained by Beaty until the balance of the purchase price, $10,267.20, payable in 24 monthly installments of $427.80 each, was fully satisfied. Upon the application of Gary Bolling, a certificate of title was issued showing title to the truck in the name of Viking Coal Co., Inc., subject to the lien for the unpaid balance of the purchase price.

On May 17, 1960, Beaty assigned the contract to the complainant, for value, and the defendants were notified thereof and directed to make the installment payments to the complainant.

The first two payments due under the contract, those for June and July, were paid to the complainant. The August payment was not made when due, and a notice of the default was mailed by the complainant to Gary Bolling on September 15, 1960. In response thereto, the complainant received a letter dated September 19, 1960, on the letterhead of Viking Coal Co., Inc., as follows:

"Gentlemen,

In regard to your letter to Gary N. Bolling of Pound Va. about the payment on the truck, we have taken this truck over, and would appreciate it very much if we could get these payments set up to the regular date due. We will start paying these off. Hope this will be satisfactory.

Your truly

Viking Coal Co Inc.
/s/Pearl Bolling Pres."

Pearl Bolling, whose name was signed to the above letter as president of the corporation, was the wife of Clarence and the mother of Gary Bolling.

Acting upon the request in this letter, the complainant extended the time for the August payment for 60 days, and also extended each succeeding payment a like amount of time. The October, November and December payments were made, but Viking Coal Co., Inc., requested an extension of the payment due in January, 1961. Pursuant to this request, the January payment and those coming due in the succeeding months were extended by the complainant for 60 days. Payments were made in March and April of 1961, but thereafter no

further payments were made and in August of that year the present proceedings were instituted.

The Bollings first contend that the chancellor erred in denying them a jury trial on the issues raised by their "pleas."

Gary Bolling filed an "answer and cross-claim" to the bill filed by the complainant. In this pleading he admitted the contract upon which the suit was based, but alleged that Beaty's agent had "represented that . . . what he had for sale for his company was just what was needed and reasonably fit for said purpose" of hauling defendants' coal, and that because of the "defects in the construction and materials" of the truck he had been damaged in the sum of $10,000.00, "which sum should be deducted from the purchase price" and which he prayed "be offset against the same." Clarence Bolling filed an "answer and cross-claim" to the bill in language identical with that of Gary's pleading except that Clarence alleged that he was damaged in the sum of $8,500.00.

At the hearing, after complainant's first witness was sworn, had taken the stand and was asked a question, counsel for the defendants inquired, "Do we have a jury?" He was advised by the court that there was no jury. He then demanded that a jury be empanelled because, "I think the court would want a jury to assess the damages if we should prevail." The chancellor denied the request.

The Bollings base their assertion that they were entitled to a jury trial on their "pleas" on the provisions of Code, § 8-213, which reads as follows:

"Trial by jury on plea in equity.—A plaintiff in equity may take issue upon a plea, and either party may have such issue tried by a jury."

Section 8-213 requires that the pleading filed by a defendant, upon which the plaintiff may take issue and as to which either party may then demand a jury trial, be, in form and in substance a plea, and not merely an answer or, as in the case before us, an answer and cross-claim.

The pleadings filed by the Bollings, were not, in form, pleas as contemplated by § 8-213. They were not so styled, but instead bore the title of "Answer and Cross-Claim."

The language used in the pleadings was not that of a plea, but that of an answer and cross-claim. Section 8-213 was not mentioned in the pleadings, nor was any demand for a jury trial contained therein. The pleadings were not sufficient to put the complainant, or the

chancellor, on notice that the defendants intended them to be anything other than that which they were styled, or to invoke the duty imposed upon the chancellor under § 8-213. *Bankers Ins. Co.* v. *Henderson*, 196 Va. 195, 204, 83 S. E. 2d 424.

Nor were the pleadings, in substance, pleas as contemplated by the code section. A proper plea in this respect is one which presents "a single set of facts (although possibly made up of numerous circumstances), as a defense to the plaintiff's suit." Lile's Equity Pleading And Practice, 3d Ed., § 199, p. 114.

The office of such a plea is "to present a simple issue of fact which operates as a bar to the plaintiff's right of recovery. The fact put in issue by the plea constitutes in itself a complete defense to the bill, or to that part of the bill to which it is pleaded." Merwin, Equity and Equity Pleading, § 972, p. 559.

The advantage of such a plea over an answer is that "it shortens the litigation, reducing the issue, as it does, to a single point." When issue is taken on such a plea and judgment is entered on the jury's favorable verdict thereon, the case is at an end. *Campbell* v. *Johnson*, 203 Va. 43, 47, 122 S. E. 2d 907; *Elmore* v. *Maryland, Etc.,* 145 Va. 42, 52, 134 S. E. 472.

In the case before us, that which was set forth in the pleadings filed by the Bollings did not, and could not if proved, operate as a bar to the complainant's recovery. In fact, the pleadings admitted the contract forming the basis of complainant's suit, they did not question the accuracy of the balance claimed to be due thereon, and they did not deny the alleged default therein by the defendants. These pleadings, rather than setting forth facts which would operate to bar the complainant's claim, conceded liability therefor, and merely claimed an offset because of the damages allegedly sustained by the Bollings.

The issue sought to be raised by the Bollings for trial by jury, as stated by their counsel, was the amount of their damages "if we should prevail." This was not such an issue upon which a jury trial was mandatory under Code, § 8-213, and the Bollings' contention with respect thereto is without merit.

The Bollings next contend that the court erred in excluding their evidence of "the fraudulent representations of the vendor" of the truck and of "a breach of the implied warranty of its merchantability for the general purposes for which it was purchased." The proffered testimony, which is vouched for in the record, relates to an

oral representation made to the Bollings by an agent of the Beaty company, before the purchase, and to the defects in, and the difficulty encountered with, the truck after the purchase. It was this evidence upon which the Bollings now say they intended to rely to show that fraudulent misrepresentations were made to them and that there was a breach of implied warranty as a result of both of which they suffered damages.

There was no error in the chancellor's ruling in this respect. The pleadings filed by the Bollings did not mention fraud or set forth any allegations which could possibly have been construed to suggest that they intended to rely upon fraud in the procurement of the contract as a defense, or upon fraudulent misrepresentations as a basis for affirmative relief. Counsel for the Bollings did not even advise the chancellor, during argument of the point in question, that the testimony sought to be introduced was for the purpose of showing fraud. He merely urged that the evidence was admissible to show the breach of an implied warranty. The Bollings apparently seek to raise the question of fraud for the first time on appeal. Under these circumstances, they will not now be heard to complain that they were prejudiced by the exclusion of evidence, when their purpose for its introduction has been so recently conceived.

Nor was the disputed evidence admissible to show the existence and breach of an implied warranty. The Bollings' pleadings did not mention implied warranty but, to the contrary, set forth that an express oral warranty was made to them prior to the purchase of the truck and the execution of the contract.

The Bollings represented to the chancellor, during argument concerning the questioned testimony, that they wished to prove the existence and breach of an implied warranty, and that the testimony was admissible for this purpose. This position was taken in the face of the allegation in their pleadings that they relied solely upon the breach of an express oral warranty. Thus, they were attempting to prove a case different from that made out in their pleadings. The function of pleading is to inform the opposing party of the nature of the case to be made against him. That purpose would be defeated if it were permissible to allege one case and prove another. *Pettyjohn* v. *National Exchange Bank*, 101 Va. 111, 118, 43 S. E. 203; *Richmond Ry. Co.* v. *West*, 100 Va. 184, 188, 189, 40 S. E. 643.

Furthermore, the contract provided that only the manufacturer's "new car" warranty would apply to the truck purchased by the

defendants. The Bollings did not claim a breach of the manufacturer's warranty but, instead, as has been noted, based their complaints, in their pleadings and in the proffered testimony, upon the express oral warranty allegedly made to them before the purchase. The express oral warranty was excluded by the written warranty. The chancellor properly ruled that the Bollings should not be permitted to vary the terms of the written contract by parol evidence of the express oral warranty. *Jones* v. *Franklin*, 160 Va. 266, 270, 271, 272, 168 S. E. 753; *Slaughter* v. *Smither*, 97 Va. 202, 204, 205, 33 S. E. 544.

Moreover, the proffered evidence, when viewed most favorably to the Bollings, fails, as a matter of law, to sustain their claim that they were damaged as the result of fraudulent misrepresentations and the breach of an implied warranty. Even if the disputed testimony had been admitted by the chancellor, he would have had no other course than to enter the decree exactly as he did. There was, therefore, no prejudice to the defendants in excluding the testimony.

Finally, Viking Coal Co., Inc., contends that the chancellor erred in entering judgment against it because it was not in existence on May 9, 1960, the date on which it allegedly executed the contract.

There is no merit in this contention. The certificate of incorporation of Viking Coal Co., Inc., was issued by the State Corporation Commission on July 7, 1960. It is true, therefore, that on the date the contract was signed the corporation had not yet come into legal existence.

However, after the corporation did come into existence it continued to hold title to the truck in its name, even to the date of the final decree; its employees, exclusively, used the truck, operating it in excess of 25,000 miles in a period of less than eight months; it adopted the contract and assumed the debt due thereby in writing on two occasions, once in September, 1960, and again in January, 1961; upon its request two extensions in the time of payment of the installments due under the contract were granted by the complainant. Under these circumstances, it cannot escape liability for the complainant's claim and the effect of the decree ordering sale of the truck in satisfaction thereof. *Holstein Co.* v. *H. Kirk Sons*, 150 Va. 82, 92, 93, 142 S. E. 373.

We find no error in the decree of the chancellor. Accordingly, it will be

*Affirmed.*