## CIRCUIT COURT OF THE CITY OF NORFOLK

Geographic Network
Affiliates-International, Inc.,
D. P. Facilities, Inc.,
and Rise One, L.L.C., Inc.

v.

Enterprise for Empowerment Foundation
at Norfolk State University,
Norfolk State University, et al.

June 27, 2005

Case No. (Chancery) CH05-263

BY JUDGE JOSEPH A. LEAFE

This case involves Plaintiffs Geographic Network Affiliates-International (Geo), D.P. Facilities (DP), and Rise One, L.L.C.'s claims for breach of contract and breach of fiduciary duty against Defendants, Enterprise for Empowerment Foundation (E2F), Norfolk State University (NSU), Dr. Marie McDemmond, and Robert Askew, regarding the wrongful and premature termination of the parties' joint venture and for their failure to pay Plaintiffs for services provided and work performed in furtherance of the venture. Plaintiffs also seek recovery under the theories of unjust enrichment, *quantum meruit*, and fraudulent inducement. The parties came before the court on June 23, 2005, to argue the merits of Defendant E2F's plea in bar. The Court has heard oral arguments and reviewed the briefs submitted by the parties.

In 2001, NSU and E2F representatives approached Geo and DP representatives regarding the Rise Center, a potential multi-use building project that E2F and NSU had conceived. E2F and NSU representatives informed Geo and DP that they conceptualized the Rise Center as a high-technology multi-park which would attract businesses to the immediate area and foster an environment of entrepreneurship, research, and technology. Initially, E2F and NSU requested the benefit of Geo and DP's experience and services in the formation of a viable plan for the development and subsequent expansion of the Rise Center and obtaining high technology clients and governmental initiatives for the project. E2F and NSU represented that they sought to leverage Geo's expertise in an attempt to secure a highly valued physical connection to the regional fiber optic network, enabling the Rise Center to become a national telecom hub.

E2F, NSU, Geo, and DP initially entered into a verbal agreement. Geo and DP performed several services under this agreement for which they received no compensation. In marketing the Rise Center, E2F and NSU relied heavily upon Geo using its best efforts to secure the fiber optic assets, and emphasized these assets in presentations to governmental bodies and local municipalities. In October 2001, E2F and NSU requested that Geo and DP expand their role with the Rise Center to include specially tailored technical advice regarding the fiber optic solutions for the site, infrastructure requirements, and coordination of area resources, including electrical, natural gas, and water. On August 5, 2002, E2F, NSU, and Geo outlined their intentions and understandings for the development and management of the Rise Center including the structures for Rise One and Rise Two in a document entitled Definitive Agreement.

The parties initially contemplated that the development and construction of the Rise One facility would be financed through a Commonwealth issued bond. In May 2002, E2F and NSU expressed an interest in obtaining a source of interim financing, which would enable the parties to begin construction of the Rise One facility in advance of the Commonwealth's anticipated 2006 or 2007 grant dispersal. The parties agreed that Geo would obtain interim financing by securing a private bond to serve as the source of funding for the construction of the Rise One facility. On March 12, 2003, Rise One, L.L.C., came into being as a limited liability company in Virginia for the purpose of carrying out the parties interim financing solution.

On February 28, 2003, Rise One, L.L.C., entered into a lease agreement with E2F, signed on behalf of Rise One by Edward Fantegrossi. Under the terms of the Lease Agreement, Rise One, L.L.C., would deliver

the Rise One facility, a newly constructed 112,500 square foot building for occupancy by E2F and NSU by December 31, 2004. The Lease Agreement reflects the parties' agreement that the newly formed entity, Rise One, L.L.C., would finance, develop, and construct the Rise One building by securing a bond for $18,000,000.00. The Lease Agreement provided that E2F would tender monthly rent, calculated as interest only payments on the bond, advanced to finance the project until April 1, 2006. According to the Lease Agreement, on April 1, 2006, E2F would purchase the building for $18,350,000.00 using funds supplied by the Commonwealth approved bond.

In February 2003, Rise One, L.L.C., successfully arranged to secure the $18,000,000.00 bond. Rise One and DP devised preliminary designs for the Rise One building. Geo acted as the program manager for the Rise One Complex and Rise One, L.L.C. With E2F and NSU's knowledge and approval, Rise One initiated bidding for work on the Rise One facility and hired local architects and a structural engineering firm.

Unbeknownst to Geo, DP, and Rise One, E2F and NSU hired another consultant and worked with the consultant to initiate major alterations in the project plan, including changes in Plaintiffs' overall role as designers of the shell and core of the building. In July 2003, E2F and NSU informed Plaintiffs that E2F had obtained a new source of interim financing for the Rise One project. E2F's new bank loan financing rendered the Rise One, L.L.C., Lease Agreement unnecessary and destroyed the basis of the Lease Agreement. On August 20, 2003, E2F and NSU advised Plaintiffs that it was unilaterally terminating its relationship with Plaintiffs. Plaintiffs did not receive payment for the work done up to the time when the parties relationship ended.

Defendant E2F now brings this plea in bar. "A Plea in Bar is a defensive pleading that reduces the litigation to a single issue," *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000) (quoting *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 562, 422 S.E.2d 757, 758 (1992)), "which, if proven, creates a bar to the plaintiff's right of recovery." *Id.* (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996)). The party asserting a Plea in Bar carries the burden of proof. *Id.* For the purposes of a Plea in Bar, the facts stated in the plaintiff's motion for judgment are deemed to be true. *See Glascock v. Laserna*, 247 Va. 108, 109, 439 S.E.2d 380, 380 (1994).

E2F's two main arguments in support of its plea in bar are, first, that Geo, DP, and Rise One cannot maintain this suit in courts within this

Commonwealth, and second, that there is no contract between Rise One and E2F.

E2F asserts that § 13.1-758 of the Code of Virginia makes it clear that Plaintiffs Geo and DP cannot maintain this suit. Va. Code Ann. § 13.1-758(A) (stating that a foreign corporation transacting business in Virginia without a certificate of authority cannot maintain a proceeding in any Virginia court until it obtains a certificate of authority). At the time when this suit was filed, Geo was a Delaware corporation that had not obtained a certificate of authority and could not maintain a proceeding in the courts of this Commonwealth. Likewise, DP was a New Jersey corporation that was not authorized to transact business in Virginia and had no certificate of authority.

Geo obtained a renewal of its certificate of authority to do business in Virginia as of April 26, 2005. DP obtained a certificate of authority to do business in Virginia as of April 29, 2005. Compliance with § 13.1-758 of the Code of Virginia is not a condition precedent to the right to file the lawsuit and compliance at a later period, before judgment, is sufficient to maintain the action. *Video Engineering Co. v. Foto-Video Electronics, Inc.*, 207 Va. 1027, 154 S.E.2d 7 (1967) (holding Virginia's domestication statute for foreign corporations indicating that an action cannot be maintained without a certificate of authority means only that the action cannot continue until compliance with the statute has occurred). Since both Geo and DP have obtained certificates of authority to conduct business in Virginia, they are not barred from maintaining this suit in the courts of the Commonwealth. Defendant E2F's plea in bar as it applies to DP and Geo is denied.

E2F makes a similar argument regarding Rise One's ability to maintain suit in this Court. *See* Va. Code Ann. § 59.1-76. Rise One's registration to do business in Virginia was cancelled on December 31, 2004. It has been reinstated as of April 26, 2005. Rise One may also proceed as a party in this suit.

E2F's second argument on its plea in bar is that no contract exists between E2F and Rise One. The lease agreement between Rise One and E2F was signed on February 28, 2003, and Rise One obtained its limited liability corporation registration on March 12, 2003. Thus, Rise One did not obtain *de jure* status as a limited liability corporation until twelve days after the lease agreement was signed. Defendant, therefore, argues that the lease agreement is invalid.

E2F asserts that neither a corporation nor a limited liability company can execute a contract prior to being recognized by the state as a legal

entity. The Limited Liability Company Act prohibits any attempt to transact business or to offer to transact business as a limited liability company prior to the company being authorized to do so. Va. Code Ann. § 13.1-1007 (making it a Class 1 misdemeanor to transact business prior to being properly incorporated). "A contract based on an act forbidden by a statute is void and no action will lie to enforce the contract." *Blick v. Marks, Stokes & Harrison*, 234 Va. 60, 64, 360 S.E.2d 345, 348 (1987). Defendant argues that the illegality of the contract precludes its enforcement under Virginia law.

Plaintiffs assert, however, that the Commonwealth of Virginia recognizes the common law doctrine of *de facto* corporate existence allowing a corporation to enter into binding contracts while its *de jure* creation by the state is pending. *Branning Manufacturing Co. v. Norfolk Southern RR.*, 138 Va. 43, 64-66, 121 S.E. 74, 81-82 (1924). Plaintiffs are incorrect on this assertion. *Hill v. Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 297 (1984).

Virginia has adopted the Model Business Corporation Act and, like other states enacting the Model Business Corporation Act, has completely abolished the old common law doctrine of *de facto* corporate existence. *See* Va. Code Ann. § 13.1-600, *et seq.*; *Hill v. Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 297 (1984). Virginia's version of the Model Business Corporations Act provides the statutory background against which the Virginia Limited Liability Company Act must be interpreted. Va. Code Ann. §§ 13.1-1000, *et seq.* Consequently, Virginia does not recognize the doctrine of *de facto* existence in regards to limited liability companies.

While Virginia does not recognize *de facto* corporate existence, it does allow a *de jure* corporation to assume the rights and obligations of a contract entered into by promoters prior to the legal existence of the corporation. *K.E.B. Investments v. The Snellings Group*, 1991 WL 834761 (Va. Cir., Richmond 1991), citing *Bolling v. Acceptance Corp.*, 204 Va. 4, 129 S.E.2d 54 (1963); *Investors & Trust v. Sweet Deals, Inc.*, 1993 WL 945597 (Va. Cir., Fairfax County 1993).

In *K.E.B. Investments*, the court states that "there is no *de facto* corporation concept under present Virginia law because a corporation is either *de jure*, with an effective certificate of incorporation, or is not a corporation at all. *K.E.B. Investments v. The Snellings Group*, 1991 WL 834761 (Va. Cir., Richmond 1991), citing *Hill v. Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 297 (1984). The court in *K.E.B. Investments* acknowledged the right of a closely held corporation to maintain a cause of action for enforcement of an assignment contract despite the fact that

the entity did not obtain its *de jure* status until eighteen days after the execution of the contract from which its claim arose. *Id.* The court noted that the contract had been executed in the name of the corporation by its soon to be principal officer and found that the plaintiff's efforts to enforce the assignment through the court action evinced its assumption of the contract, by which it acquired all rights and privileges of the contracting party. *Id.* (citing *Bolling v. General Motors Acceptance Corp.*, 204 Va. 4, 129 S.E.2d 54 (1963)).

In *Investors & Trust v. Sweet Deals, Inc.*, 1993 WL 945597 (Va. Cir., Fairfax County 1993), the court held that a deed executed by a corporation, prior to its formal incorporation was valid on the grounds that "all parties... clearly anticipated that the corporation would come into existence soon after the transaction. That it did is sufficient to validate the prior transaction."

The Rise One Lease Agreement was executed in the name of Rise One, L.L.C., by Edward Fantegrossi, as manager. Plaintiffs assert that Mr. Fantegrossi was the entity's future principal and incorporator. Two weeks after Mr. Fantegrossi executed the Lease Agreement on behalf of Rise One, L.L.C., it obtained *de jure* status as a Virginia limited liability company. Rise One assumed all of the rights and obligations provided under the Lease Agreement. Rise One acted as construction manager for the Rise One project, devised initial building plans, initiated the bidding process for construction on the facility, secured bond financing for the project, and submitted invoices to E2F. In addition, the plain language of the Definitive Agreement signed by E2F and Geo in advance of the Rise One Lease Agreement evinces the parties' intent to create a limited liability company for the purpose of carrying out the development and construction of the Rise Center.

The Court finds that Rise One adopted the contract entered into by Mr. Fantegrossi twelve days prior to Rise One obtaining its limited liability corporate status in Virginia.

The Court denies both Defendant's Plea in Bar and Defendant's Motion for the Award of Attorney's Fees incurred in responding to Plaintiff's response.