STANARDSVILLE VOLUNTEER FIRE COMPANY,
INCORPORATED

v.

DAVID F. BERRY, ET AL.

Record No. 820507

Decided June 14, 1985, at Richmond

Present: All the Justices

C. Waverly Parker (Robert L. Bushnell, on brief), for appellant.

Daniel R. Bouton (L. B. Chandler, Jr.; Puryear, Chandler & Early, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal arises out of a protracted controversy concerning the location of an easement. The dispositive question is whether the court erred in transferring an action of trespass to chancery, depriving the plaintiff of the right of trial by jury. Because we must reverse on procedural grounds, the factual background requires only brief discussion.

In 1965, the Stanardsville Volunteer Fire Company, Incorporated (Fire Company), purchased a parcel of land containing .84 acres along the north side of Route 33 in the Town of Stanardsville from parties named Huff. In the conveyance, the Huffs reserved the following easement for the benefit of their remaining lands, which lay north of the parcel conveyed to the Fire Company:

The grantors expressly reserve unto themselves, their heirs, assigns, and transferees a 20 foot right of way across said property leading north from U.S. Highway No. 33 and parallel to the Grover C. Morris boundary line to the retained lands of the said parties of the first part. The reservation of this easement is intended as a perpetual easement to run with the land. This 20 foot right of way adjoins the Grover C. Morris property and is parallel thereto being located on the eastern portion of the property herein conveyed. The grantee, Stanardsville Volunteer Fire Company, Inc., shall also have perpetual and joint use of this right of way.

The Grover C. Morris line constitutes the eastern boundary of the parcel conveyed.

Subsequently, the Fire Company erected its fire house on the .84-acre lot, facing Route 33, and David F. Berry and Doris M. Berry, his wife, acquired the Huff farm to the north, thus becoming the Huffs' successors in title and interest to the 20-foot easement.

The easterly 20 feet of the .84-acre lot, which was encumbered by the recorded easement, has been virtually impassable until the present time because of its elevation high above the grade of Route 33, resulting in a steep bank at the edge of the highway. It was, at the time of trial, partially obstructed by trees.

Soon after it acquired the .84-acre lot, the Fire Company cleared and graded a level area, west of the 20-foot strip, as a parking lot, with an entrance from Route 33. The entrance occupied a small part of the southwesterly corner of the 20-foot strip, which was cut down to ease the grade.

In 1968, a corporation then partially, and later entirely, owned by David F. Berry was engaged in developing a subdivision on a part of the Huff farm north of the Fire Company lot. The corporation laid a gravel base, 10-12 feet wide, from the Fire Company parking lot, through the Fire Company's land to its northerly line, added gravel to the Fire Company's entrance drive from Route 33, removed a fence which ran along the northerly boundary of the Fire Company's lot, and began to use the road thus formed for ingress and egress across the Fire Company's property. Later, the Berrys began to use the residue of the Huff property for farming operations and continued to use the road for that purpose. Although the road occupies the southwesterly and northwesterly cor-

ners of the 20-foot strip, most of its length runs through the Fire Company lot entirely west of and outside the 20-foot strip.

A protracted series of negotiations, not pertinent here, ensued between the Fire Company and the Berrys. On September 15, 1980, the Fire Company brought matters to a head by erecting a barbed-wire fence parallel to, and 22 feet west of, the Grover Morris line, completely obstructing the existing gravel road. David F. Berry responded by personally removing those parts of the fence which obstructed the road, using a farm tractor.

On October 14, 1980, the Fire Company initiated this proceeding as a motion for judgment seeking compensatory and punitive damages against David F. Berry for trespass upon and damage to its property lying west of the 20-foot strip. The court sustained a demurrer and the Fire Company, with leave of court, filed an amended motion for judgment. Berry filed a "petition for temporary injunction" in the Fire Company's action at law. The Fire Company moved to dismiss it, on the ground that injunctive relief was not available in an action at law. Berry thereafter abandoned the petition.

On January 20, 1981, Berry filed an independent bill of complaint on the chancery side of the court, praying for a temporary injunction to restrain the Fire Company from interfering with his continuing "use and enjoyment of the existing outlet road currently located on the property of the [Fire Company]."

On March 3, Berry filed motions in the chancery cause for leave to amend the bill to seek a permanent injunction and also to transfer the Fire Company's action at law to the chancery side of the court and to consolidate the two cases. On April 13, over the Fire Company's objection, the court granted these motions and ordered that the Fire Company's action at law be transferred to equity and consolidated with Berry's suit for injunction.

David F. Berry, now joined by his wife Doris M. Berry, filed an amended bill of complaint in three counts. Count I alleged that an easement by implication or by express reservation, over the existing outlet road, was vested in the Berrys. The Berrys later abandoned the claim of easement by implication and the court struck the evidence respecting express reservation. Count II alleged that the Berrys were entitled to an easement by estoppel, based upon the Fire Company's consent to the present location of the road and the Berrys' improvements thereon and continued use thereof with the Fire Company's acquiescence. Count III alleged

that the Fire Company had given the Berrys an irrevocable license to use the existing road. The Fire Company demurred to all counts. The court overruled the demurrers and ordered the Fire Company to file responsive pleadings.

The Fire Company filed eight separate pleas to Count II and nine to Count III, demanding jury trial on each. The Berrys moved to strike all the pleas as to Count II as insufficient. The court granted the motion and struck all pleas as to Count II and two of the pleas to Count III. The court's order, entered July 14, directed the Fire Company to "file its further pleadings in response to . . . Count Two of the Amended Bill of Complaint, including an answer, within twenty-one days of the date of this Order." The order set Count II for trial on September 14, 1981, *ore tenus*, but did not set Count III. The court took the position, with which counsel expressed no serious disagreement, that the issues in Count III were subsumed in those raised by Count II and that the trial would prove dispositive of all issues remaining in the case.

Within the 21 days fixed by the order of July 14, the Fire Company filed an answer and four "further pleas" to Count II, each ending with the traditional formula invoking the right of jury trial: "AND OF THIS the [Fire Company] puts itself upon the Country." The first plea stated that the Fire Company had never consented to any location of the road outside the 20-foot strip; the second stated that the Fire Company had not interfered with the use or location of any roadway to which it had ever consented; the third alleged that it had never consented to any location of the roadway which it had later blocked; the fourth alleged that it had never consented to any easement in the Berrys over the existing road.

On August 21, the court sustained the Berrys' motion to strike the four "further pleas" on the ground that they were "not timely filed" and because "they do not present a single factual issue for determination by a jury; [and] that such pleas, even if true, would not result in an end to the litigation regarding Count II."

The case was tried *ore tenus* on September 14-16 and taken under advisement on briefs. After further oral argument, the chancellor ruled that the location of the easement had been changed from the 20-foot strip to the present location of the road by virtue of the Fire Company's express or implied consent. The court entered a decree on December 18, 1981, declaring that the

Berrys were the beneficiaries of an easement, 20 feet wide, along the outlet road as it existed on the Fire Company's property on September 15, 1980, and enjoining the Fire Company from any interference with its use. We granted the Fire Company an appeal.

█ Code § 8.01-270 provides, in pertinent part:

No case shall be dismissed simply because it was brought on the wrong side of the court, but whenever it shall appear that a plaintiff has proceeded at law when he should have proceeded in equity, or in equity when he should have proceeded at law, the court shall direct a transfer to the proper forum,
. . . .

This statute applies only where a plaintiff has erroneously brought his case on the wrong side of the court. It furnishes no authority for a transfer where the plaintiff has invoked the proper forum. *Quick v. Southern Churchman Co.*, 171 Va. 403, 415, 199 S.E. 489, 494 (1938). Because trespass *quare clausum fregit* fell within one of the original nine common-law forms of action, the Fire Company brought its action on the proper side of the court, and the court erred in transferring the action to equity over the Fire Company's objection.

█ The Constitution of Virginia, art. I, § 11, provides in pertinent part: "That in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred." This provision is inapplicable to those proceedings in which there was no right to jury trial when the Constitution was adopted, *Bowman v. Va. State Entomologist*, 128 Va. 351, 372, 105 S.E. 141, 148 (1920). Therefore it has no application to ordinary suits in chancery, *W. S. Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 263-64, 108 S.E. 15, 21 (1921), but it is clearly applicable to common-law actions seeking damages, including punitive damages, *O'Brien v. Snow*, 215 Va. 403, 405, 210 S.E.2d 165, 167 (1974). Because the transfer to equity deprived the Fire Company of its right to jury trial, the error was not harmless. *Cf. Quick*, 171 Va. at 416, 199 S.E. at 494 (plaintiff's action at law erroneously transferred, but error

harmless because plaintiff voluntarily filed bill in equity and obtained complete relief there).[1]

■ The Berrys argue on appeal that if they should prevail in the action at law, the best result available to them would be a verdict finding them "not guilty" of trespass. Thus, they say, even though they could set up their equitable claim to an easement by estoppel as a defense to the action at law, pursuant to Rule 1:4(k), they could not obtain complete relief without a transfer to the equity side, where they could be protected by an adjudication of their right to the easement coupled with injunctive relief against interference. They rely on *Thomas* v. *Lauterbach*, 205 Va. 176, 178, 135 S.E.2d 781, 783-84 (1964), for the proposition that where "complete relief cannot be obtained on the side of the court where the case was originally brought, the court should transfer the case to that side of the court where complete relief may be granted in one proceeding."

This reliance is misplaced. In *Thomas*, a plaintiff brought an action at law for a real estate commission. During the pendency of his action, he discovered from the defendant's pleadings that, because of an amended contract that the plaintiff did not know the defendant had signed, the plaintiff was actually entitled to a conveyance of land in kind as his commission. The defendant's pleadings made it clear that the controversy was cognizable only in equity. The *plaintiff* therefore moved for a transfer in order that he might amend his pleadings to seek specific performance. We affirmed the trial court's transfer of the action, based upon the plaintiff's implicit concession that he had inadvertently brought his action on the *wrong* side of the court and discovered his error only when the defendant filed responsive pleadings.

Here, the Berrys' contention that they cannot receive complete relief on the law side is true as far as it goes, but their remedy is not a transfer. If they had wished to test their property right before undergoing jury trial in the trespass case, they were enti-

---

[1] In *Shevel's, Inc.* v. *Southeastern Assoc.*, 228 Va. 175, 320 S.E.2d 339 (1984), we held discretionary a transfer from law to equity where the defendant's grounds of defense asked for affirmative equitable relief which the court treated as a cross-bill. The plaintiff in *Shevel's, Inc.*, waived jury trial, however, and contended only that he was entitled to a bench trial at law rather than in equity. Thus, *Shevel's Inc.* lacked the constitutional question involved here, where the transfer from law to equity affects a plaintiff's right to trial by jury. In the circumstances of *Shevel's, Inc.*, and where jury trial is waived, a transfer remains within the court's discretion.

tled to bring a chancery suit seeking vindication of their claim to an easement by estoppel, and to enjoin prosecution of the Fire Company's action at law until their property claim could be determined. If the Berrys were successful in equity, the injunction could be made permanent. If they should fail to prevail in equity, the Fire Company's right to proceed in the action at law would be unimpaired, and the issue of damages could be submitted to trial by jury.

The Fire Company has assigned error to numerous other rulings below, but most of these are either subsumed in the foregoing or are not reached because of the procedural posture of the case. One assignment, however, requires discussion because of its significance in any further proceedings upon remand.

Count I of the Berrys' amended bill has been eliminated from the case, as stated above, and we agree with the trial court's analysis to the effect that the issues under Count III are subsumed in Count II and would be disposed of by trial of Count II. Indeed, counsel virtually concede that there is but one factual issue to be tried in the chancery case: whether the parties, by express or implied consent, have agreed to relocate the easement from the original 20-foot strip to the present location of the road. If such consent is found at trial, the Berrys are entitled to equitable relief; otherwise, the Fire Company is entitled to submit its claim for damages in trespass to a jury.

We further agree with the trial court's holding that the eight pleas originally filed by the Fire Company to Count II were insufficient, but we do not agree that this can be said of the four "further pleas" the Fire Company filed. Although overlapping and somewhat redundant, each "further plea" set up a variation on a single state of facts which, if true, would end the litigation in the Fire Company's favor. Each plea attempted to refute the factual allegations upon which Count II was based, by denying the existence of the prerequisite conditions for the creation of an easement by estoppel. In the circumstances of this case, each, if proved, would constitute a complete defense to the Fire Company and is, therefore, "sufficient" as that term is used in chancery practice. E. Meade, Lile's Equity Pleading and Practice, § 201, p. 115 (3d ed. 1952). *Cf. Bolling* v. *Acceptance Corporation*, 204 Va. 4, 8, 129 S.E.2d 54, 56-57 (1963) (a plea of partial set-off is insufficient, because it would not end the case).

The defense by plea is used where the defendant desires to present a *single state of facts* (although possibly made up of numerous circumstances), as a defense to the plaintiff's suit. The advantage which the plea presents over the answer is that it shortens the litigation—reducing the issue, as it does, to a *single point*.

E. Mead, *supra*, § 199, p. 114 (3d ed. 1952).

The "further pleas" met the foregoing test. Further, they were timely because they were filed on August 4, within the 21-day period given to the Fire Company by the court's July 14 order in which to file "further pleadings in response . . . including an answer." They were filed before the answer. Thus, the court erred in striking them.

■ Here again, the error, although procedural, was not harmless because it had the effect of depriving the Fire Company of the right of trial by jury. Code § 8.01-336 provides in pertinent part:

A. The right of trial by jury as declared in Article I, § 11 of the Constitution of this Commonwealth and by statutes thereof shall be preserved inviolate to the parties.

. . . .

D. *Trial by jury of plea in equity.*—In any action in which a plea has been filed to an equitable claim, and the allegations of such plea are denied by the plaintiff, either party may have the issue tried by jury.[2]

Rule 2:10 provides: "Unless the plaintiff expressly declines to reply to an answer or plea he shall be deemed to have filed a general replication thereto." The purpose of Rule 2:10 is to bring the parties in a chancery suit to issue promptly upon the filing of defensive pleadings, without the necessity of formal denials. Accordingly, the allegations of the Fire Company's "further pleas" were placed in issue automatically by operation of the rule, and Code § 8.01-336(D) applied to them.

---

[2] The right of jury trial conferred by this section post-dates the adoption of the Constitution. It was evidently prompted by a remark made by Edmund Pendleton, President of the Court, in *Pryor v. Adams*, 1 Call (5 Va.) 382, 394 (1798), indicating that no such right existed at that time. It came into the Code with the revision of 1819, and has been carried forward, with strengthening amendments, to the present. For a thorough discussion of its history, see *Towson v. Towson*, 126 Va. 640, 647, 102 S.E. 48, 51 (1920).

■ We have repeatedly held that this section and its predecessors provide for a jury trial as a matter of right on the motion of either party. There are distinct differences between the trial of an issue out of chancery, now covered by Code § 8.01-336(E), and trial of an issue on a plea in equity, with which we are here concerned. In the case of an issue out of chancery, the decision whether to impanel a jury rests in the chancellor's discretion; he may decide to discharge the jury before verdict, and its findings are merely advisory, "informing the conscience of the chancellor." In the case of an issue on a plea in equity, not only does either party have the right to a jury trial, but the jury may not be discharged before verdict and its verdict, when returned, is as binding and conclusive upon the factual issue submitted to it as is a jury verdict in an action at law. *Campbell* v. *Johnson*, 203 Va. 43, 47, 122 S.E.2d 907, 909-10 (1961); *Eagle Lodge* v. *Hofmeyer*, 193 Va. 864, 871, 71 S.E.2d 195, 199 (1957); *Phillips* v. *Wells*, 147 Va. 1030, 1043, 133 S.E. 581, 585 (1926); *Elmore* v. *Maryland, Etc.*, 145 Va. 42, 52, 134 S.E. 472, 475 (1926); *Towson, supra*, 126 Va. at 647, 102 S.E. at 50.

In striking the "further pleas," the court removed the cause from the operation of Code § 8.01-336(D), and thus abrogated the Fire Company's jury trial of right on the single issue remaining to be determined. The Fire Company was required to go to trial on its answer, where a jury trial would have been merely discretionary as an issue out of chancery. The issue was actually tried *ore tenus*, as stated above. It follows that the Fire Company, on remand, will have the right to submit the factual issue presented by its "further pleas" to a jury's determination.

We will reverse the decree appealed from and remand both the law and the chancery cases to the trial court, with direction to reinstate the Fire Company's action of trespass on its law docket, and for such further proceedings consistent with this opinion as the parties may wish to pursue.

*Reversed and remanded.*