## Barbara B. Nelms, Etc.

### v.

## Joseph Hunter Nelms, et al.

Record No. 850575

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

*Robert E. Gillette* for appellant.
*Richard D. Mattox* for appellee Eugene Nelms, Jr.
No brief or argument for appellees Joseph Hunter Nelms and Joseph Eugene Nelms, Sr., deceased.

POFF, J., delivered the opinion of the Court.

In a "Bill of Complaint for Declaratory Judgment" expressly invoking the chancery jurisdiction of the trial court, Herbert C. Nelms (Herbert) asked the chancellor to declare that Joseph Eugene Nelms, Sr. (Mr. Nelms), was competent to execute a deed conveying his homeplace to his son, Herbert. Herbert named his two brothers, Joseph Eugene Nelms, Jr. (Eugene), and Joseph Hunter Nelms (Hunter), and their father as respondents. Mr. Nelms died before trial and later, when Herbert died, his widow, Barbara Nelms, was substituted as complainant. A guardian ad litem, appointed to defend the interests of Hunter, and counsel for Eugene filed an answer and a cross-bill praying that the deed "be decreed null and void" on the grounds that Mr. Nelms was incompetent to execute the instrument and that the deed was "a result of undue influence".

Eugene moved for an issue out of chancery on the question of mental competency raised by his cross-bill. Denying complainant's motion to refer the cause to a commissioner in chancery, the chancellor ruled from the bench that he would submit the competency question to the jury by an interrogatory. The chancellor did not state the ground upon which he rested his ruling.

The chancellor seated a jury of seven to hear the evidence. The record shows that Mr. Nelms, although illiterate, had been the owner and operator of three successful business enterprises. He suffered from diabetes, and in 1978 he sustained a serious heart attack. As a consequence, his doctors instructed him to follow a strict diet and to take medicine daily. Mr. Nelms did neither on a regular basis.

In his will, dated April 11, 1980, Mr. Nelms devised his homeplace in equal shares to his three sons. On January 12, 1981,

he executed a deed of gift conveying the same property to his son Herbert. After his mark had been made and witnessed, Mr. Nelms learned that the deed did not contain a provision reserving a life estate. He instructed the attorney, Mrs. Ann Jones, to add such a clause to the document and send him a copy of the deed as revised. Mrs. Jones followed his instructions, but she did not record the instrument. Prompted by the results of legal research, she decided that the deed should be re-executed in a second and formal ceremony.

Because Herbert had told her that Eugene might contest the conveyance, she arranged for the ceremony to be held in the presence of a medical witness. With Mr. Nelms' consent, she made an appointment for Dr. Desmond J. Longford to administer a blood-sugar test and cardiac examination. Dr. Longford conducted the physical examinations and a mental examination in his office on February 2, 1981. Concerning the need for the physical tests, he explained that "when blood sugar of a diabetic is grossly out of control, it can affect . . . behavior and . . . state of mind . . . such that one can be absolutely confused not knowing what one was doing". He said that a person's mental capacity also would be impaired "[i]f the heart is not beating properly . . . [because] the oxygenation of the blood going through the lungs is affected, so you would get a relative anoxia or shortness of oxygen supply to the brain."

The clinical tests revealed that Mr. Nelms' "blood sugar at that time was well controlled", that he had "no sugar in his urine", and that his heartbeat, pulse, and blood pressure were "in good shape." Evaluating the results of the mental examination, Dr. Longford said that Mr. Nelms "was in full possession of . . . all his mental faculties." Dr. Longford witnessed Mr. Nelms' mark, and Mrs. Jones' clerk notarized the deed. "I'm quite categorically sure he knew what he was doing," Dr. Longford added, "and if I had had any doubt I wouldn't have signed it."

The complainant's evidence consisted primarily of the testimony of Dr. Longford, Mrs. Jones, and the notary public, the three persons who witnessed execution of the deed of gift. In summary, their testimony showed that the contents of the deed were explained to Mr. Nelms, "paragraph by paragraph"; that he correctly identified the property involved; that he remembered the date of his birth and the name of the President; that he knew the names of his three sons; that he wanted Herbert to have his

homeplace because, he explained, Herbert and his wife had been caring for him; that he inquired what effect the *inter vivos* conveyance might have on the tax liability of his estate; and that all of Mr. Nelms' replies to questions posed to him by Mrs. Jones and Dr. Longford were not merely affirmative or negative but narrative and responsive as well. The three witnesses were unanimous in their conclusion that Mr. Nelms was mentally competent at the time he executed the deed of gift.

The witnesses called by the respondents testified that, following Mr. Nelms' heart attack in 1978, he began to exhibit symptoms of progressive senility. He was careless in his attire, sometimes appearing in public with mismatched clothes, with garments turned wrong side out, and with one sock missing. His memory for names was faulty. His behavior was abnormal. On several occasions, friends found him wandering in a daze and asking for a glass of water. He attempted to buy sandwiches at a flower shop. He put salt in his coffee. He tried to get a restaurant to refund money he had paid for food he had ordered and not eaten. He called for an ambulance because he liked to see the blinking lights. He sat in a chair in his office and pretended that he was driving a truck. As the transcript reveals and as Eugene's counsel conceded in oral argument, however, all such testimony related to events that occurred at times other than the time the deed was executed.

At the conclusion of the evidence, the chancellor ruled that there was no evidence to support the respondents' allegation of undue influence, instructed the jury on the law of mental competency, and submitted for the jury's determination the following interrogatory:

Did Joseph Eugene Nelms, Sr., possess mental capacity on February 2, 1981, to execute his deed dated January 12, 1981, conveying his home to his son, Herbert C. Nelms, reserving unto himself a life estate in said real estate?

The jury responded in the negative. In a final decree entered May 2, 1985, the chancellor found that "the verdict is amply sustained by the evidence", ruled that the verdict should be "confirmed", declared the deed of gift "null, void and [of] no effect", and dismissed the bill of complaint.

On appeal, the complainant assigns error to several rulings of the chancellor refusing instructions she had tendered. One told the

jury that "an unequal disposition of property by a father among his children does not indicate mental incapacity." Another stated that "conveyances of real estate from a parent to a child are not guarded with a jealous eye, but are generally presumed to be free from suspicion." A third instructed the jury that "the fact that a man made a will dividing . . . his . . . property among all his children and thereafter conveys part of his land to one of his children . . . has no tendency to impeach the validity of the deed but simply shows a change of purpose."

 We find no merit in these assignments of error. The complainant cites cases reciting each of the propositions stated in these instructions. We have held, however, that such pronouncements, although pertinent to the analysis in a particular case, are not necessarily appropriate as jury instructions in every case. *Oak Knolls Realty* v. *Thomas*, 212 Va. 396, 397, 184 S.E.2d 809, 810 (1971). Moreover, when, as here, the evidence relevant to the determination of a factual issue essential to the disposition of the dispute is in conflict, trial courts should not grant instructions that appear to place a judicial imprimatur on selective evidence. "We have repeatedly held that it is reversible error for a trial judge to single out for emphasis a part of the evidence tending to establish a particular fact." *Woods* v. *Commonwealth*, 171 Va. 543, 547-48, 199 S.E. 465, 467 (1938); *accord LeVasseur* v. *Commonwealth*, 225 Va. 564, 595, 304 S.E.2d 644, 661 (1983); *Snyder* v. *Commonwealth*, 220 Va. 792, 797, 263 S.E.2d 55, 58 (1980).

The complainant also charges that the chancellor erred "by deleting from Instruction Number 1 the language 'the time in which a deed is executed is the vital time for mental capacity to exist.' "

 We think the language excised from the instruction could have led the jury to believe that the testimony of witnesses present at the execution of the deed was conclusively dispositive. This is not the law in Virginia. All the evidence adduced by the respondents concerning the grantor's abnormal conduct, memory lapses, and other symptoms of episodic psychosis was relevant to the jury's assessment of the probative value of the evidence adduced by the complainant to show that Mr. Nelms was mentally competent when he executed the deed. "[E]vidence of mental incapacity shortly before or after the principal event is admissible because it throws light on the probable mental condition at the time of such event". *Price's Executor* v. *Barham*, 147 Va. 478, 481, 137 S.E. 511, 512 (1927).

As amended, the instruction told the jury that "the testimony of those present when the deed in this case was executed is entitled to great weight." This is fully consistent with the rule stated in the case the complainant cites in support of her assignment of error:

[T]he testimony of those who were present at the *factum* is chiefly regarded, and held to be more reliable than the opinion of other witnesses based on facts, which may be proved and yet not be the result of unsoundness of mind.

*Wampler* v. *Harrell*, 112 Va. 635, 640, 72 S.E. 135, 137 (1911).

■ We will uphold the chancellor's rulings on these instructions. But this does not end our inquiry.

■ As appears from the language of the final decree, the chancellor treated the jury's response to the interrogatory as a conventional jury verdict. Specifically, he rested his conclusion that Mr. Nelms was mentally incompetent to execute the deed on a finding that "the verdict is amply sustained by the evidence" and should be "confirmed". We are of opinion, however, that the jury was misinformed on the burden of proof and, consequently, that the chancellor's reliance on the verdict was misplaced.

■ The complainant acknowledges that the burden of proving the grantor's mental capacity to execute the deed rested upon her as the proponent of its validity. *See Waddy* v. *Grimes*, 154 Va. 615, 641, 153 S.E. 807, 815 (1930). Her complaint is that one of the jury instructions fixed the measure of her burden as "clear and convincing".

■ "There is . . . a presumption in favor of the sanity of every man until evidence that he is of unsound mind is introduced; and this presumption applies in all cases, criminal as well as civil." *Wallen* v. *Wallen*, 107 Va. 131, 150, 57 S.E. 596, 598-99 (1907); *accord Fines* v. *Kendrick*, 219 Va. 1084, 1086, 254 S.E.2d 108, 110 (1979); *see also Porter* v. *Porter*, 89 Va. 118, 122, 15 S.E. 500, 501 (1892); *Miller* v. *Rutledge*, 82 Va. 863, 867, 1 S.E. 202, 205 (1887). The presumption of sanity is rebuttable, but it is not necessarily extinguished by conflicting evidence.

As we said in *Rowe* v. *Rowe*, 144 Va. 816, 822, 130 S.E. 771, 772 (1925), "where the evidence of equally credible witnesses for and against the presumption is equally balanced . . . the presumption will prevail." Under this rule, if the jury in this case had

found the evidence of Mr. Nelms' mental capacity in equipoise, the presumption of sanity would have prevailed; but the jury was instructed that the deed was valid only if the evidence of sanity was "clear and convincing".[1]

We hold that the risk of non-persuasion resting upon the complainant required her to prove her case by the greater weight of the evidence. Because the chancellor erred in imposing a heavier burden, and since we must assume that the verdict on which he relied had been influenced by that error,[2] we will reverse the decree and remand the cause for a new trial.

The question whether it was proper to empanel a jury was raised below and argued on appeal. That question likely will arise in a new trial, and we will consider it now.

The chancellor did not specify the ground upon which he based his decision to submit the question of mental competence to a jury. He treated the jury's response to the interrogatory as a conventional jury verdict, however, and we assume, as the respondents do, that he relied upon Code § 8.01-336(D) which provides as follows:

> In any action in which a plea has been filed to an equitable claim, and the allegations of such plea are denied by the plaintiff, either party may have the issue tried by jury.

Respecting that subsection, we have recently said that "[i]n the case of an issue on a plea in equity, not only does either party have the right to a jury trial, but the jury may not be discharged before verdict and its verdict, when returned, is as binding and conclusive upon the factual issue submitted to it as is a jury verdict in an action at law." *Stanardsville Vol. Fire Co.* v. *Berry*, 229 Va. 578, 587, 331 S.E.2d 466, 471-72 (1985) (citations omitted). We applied that subsection in *Berry* because the respondent had filed pleas in equity and, under Rule 2:10, the complainant had denied the allegations of the pleas.

---

[1] Of course, the presumption of sanity does not prevail and the clear-and-convincing standard does apply when the rebuttal evidence shows that a testator had been formally adjudged insane before he wrote his will. *State Hospital* v. *Wininger*, 196 Va. 300, 312, 83 S.E.2d 446, 453 (1954).

[2] We also are of opinion that the chancellor's refusal to advise the jury of his ruling that the evidence of undue influence was insufficient to support the respondents' allegation in their cross-bill could have influenced the jury's answer to the interrogatory.

In our view, a plea, whether at law or in equity, is a discrete form of defensive pleading. As distinguished from an answer or grounds of defense, it does not address the merits of the issues raised by the bill of complaint or the motion for judgment. Yet, a plea is a pleading which alleges a single state of facts or circumstances (usually not disclosed or disclosed only in part by the record) which, if proven, constitutes an absolute defense to the claim.

> Familiar illustrations of the use of a plea would be: The statute of limitations; absence of proper parties (where this does not appear from the bill itself); *res judicata*; usury; a release; an award; infancy; bankruptcy; denial of partnership; *bona fide* purchaser; denial of an essential jurisdictional fact alleged in the bill, etc.

E. Meade, Lile's Equity Pleading and Practice, § 199, p. 114 (3d ed. 1952) (footnote omitted).

Here, the respondents filed general answers and a cross-bill. In *Bolling* v. *Acceptance Corporation*, 204 Va. 4, 129 S.E.2d 54 (1963), the complainant filed a bill of complaint to enforce a conditional sales contract. On appeal, the respondents contended that "the chancellor erred in denying them a jury trial on the issues raised by their 'pleas.'" *Id.* at 7, 129 S.E.2d at 56. Referring to the statutory ancestor of Code § 8.01-336(D), we said:

> Section 8-213 requires that the pleading filed by a defendant, upon which the plaintiff may take issue and as to which either party may then demand a jury trial, be, in form and in substance a plea, and not merely an answer or, as in the case before us, an answer and cross-claim.

> The pleadings filed by the Bollings, were not, in form, pleas as contemplated by § 8-213. They were not so styled, but instead bore the title of "Answer and Cross-Claim."

> The language used in the pleadings was not that of a plea, but that of an answer and cross-claim. Section 8-213 was not mentioned in the pleadings, nor was any demand for a jury trial contained therein. The pleadings were not sufficient to put the complainant, or the chancellor, on notice that the defendants intended them to be anything other than that which

they were styled, or to invoke the duty imposed upon the chancellor under § 8-213.

*Id.* at 7-8, 129 S.E.2d at 56 (citation omitted).

 Applying the rule in *Bolling*, we hold that the pleadings the respondents filed were not pleas in equity within the intendment of Code § 8.01-336(D). Yet, the question occurs whether the chancellor's decision to submit an interrogatory to a jury was authorized under Code § 8.01-336(E).

 Unlike a jury's response to an interrogatory submitted under subsection (D), a jury's findings under subsection (E) are not "binding and conclusive" but "are merely advisory, 'informing the conscience of the chancellor.'" *Berry*, 229 Va. at 587, 331 S.E.2d at 471. Code § 8.01-336(E) provides:

> In any suit in equity, the court may, of its own motion or upon motion of any party, supported by such party's affidavit that the case will be rendered doubtful by conflicting evidence of another party, direct an issue to be tried by a jury.

As we construe subsection (E), the chancellor may, upon the motion of any party, direct an issue out of chancery whenever the facts stated in the party's affidavit render the resolution of the cause doubtful. In the alternative, the chancellor may "of [his] own motion", submit an issue to a jury even "though not requested by either party." *Hook* v. *Hook*, 126 Va. 249, 254, 101 S.E. 223, 225 (1919) (citations omitted). In either event, the decision is one within the sound discretion of the chancellor.

> The object of an issue is to satisfy the conscience of the chancellor in a doubtful case. But it is not to be directed merely because the evidence is contradictory. The conflict of evidence must be great and its weight so nearly evenly balanced that the court is unable or with difficulty able to determine where preponderance lies. It is a matter within the sound judicial discretion of the chancellor and is subject to review on appeal.

*Eastern Finance Co.* v. *Gordon*, 179 Va. 674, 680, 20 S.E.2d 522, 524-25 (1942) (citations omitted).

 Here, the complainant's bill of complaint expressly invoked the chancery jurisdiction of the trial court. In their cross-bill, the

respondents prayed that "the said deed be decreed null and void". The parties agree that the cause was filed properly on the chancery side of the court. Because the jury was misdirected, however, we will reverse the decree and remand the cause for further proceedings consistent with the views expressed in this opinion.

*Decree reversed and cause remanded.*