Present: Carrico, C.J., Compton, Stephenson,[1] Lacy, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

KEITH EDWARD ANGSTADT, ET AL.

v.  Record No. 961579    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                September 12, 1997
ATLANTIC MUTUAL INSURANCE
COMPANY

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Paul F. Sheridan, Judge

The primary issues in this appeal are (1) whether the
defendants in a declaratory judgment suit were denied their right
to a jury trial by the trial court's ruling that the jury was
impaneled under Code § 8.01–336(E) to decide an issue out of
chancery, and (2) whether the trial court erred in entering
judgment contrary to the jury verdict.

Atlantic Mutual Insurance Company (Atlantic) filed a
declaratory judgment suit against Keith Edward Angstadt, Raymond
Rask, and Multicomm Telecommunications, Inc. (Multicomm), seeking
relief from any duty to pay a $2,000,000 judgment Angstadt had
obtained against Atlantic's insureds, Multicomm and Multicomm's
employee, Rask. Angstadt, Rask, and Multicomm (collectively, the
defendants) submitted an amended answer and grounds of defense,
and moved to transfer the case for consolidation with an action
at law, a declaratory judgment action brought by Atlantic against

_____

[1]Justice Stephenson participated in the hearing and decision
of this case prior to the effective date of his retirement on
July 1, 1997.

National Union Fire Insurance Company.[2]  The trial court denied
the motion.

Citing Code § 8.01-188, the defendants requested that a jury
be impaneled to determine issues of fact.  This section provides
that

> [w]hen a declaration of right or the granting of
> further relief based thereon shall involve the
> determination of issues of fact triable by a jury, such
> issues may be submitted to a jury in the form of
> interrogatories, with proper instructions by the court,
> whether a general verdict be required or not.

The trial court granted this motion.

The trial court then granted Atlantic's motion for summary
judgment against all the defendants.  In their original appeal to
this Court, the defendants challenged the award of summary
judgment, but they did not assign error to the trial court's
earlier ruling denying transfer of the case.  We reversed the
award of summary judgment in Angstadt v. Atlantic Mutual
Insurance Company, 249 Va. 444, 457 S.E.2d 86 (1995), and
remanded the case for further proceedings.

During a pre-trial hearing on remand, the trial court
requested the parties to frame "the issue out of chancery [that]
the jury is going to decide."  The trial court later repeated its
request for "the issue out of chancery," and indicated that the
verdict would be an "advisory decision by the jury."  The

---

[2]National Union Fire Insurance Company provided excess
coverage above Atlantic's $1,000,000 policy limit.

defendants did not object to the trial court's characterization of the jury verdict as being advisory, or to the court's request for a statement of the issue out of chancery.

Atlantic and the defendants agreed that the sole question to be presented to the jury was whether Rask willfully failed to cooperate with Atlantic by not appearing at a scheduled deposition on April 26, 1993. The trial court heard the following evidence with a jury in a three-day trial.

In the underlying tort action, Angstadt had filed suit against Rask and Multicomm, claiming he had been injured as a result of the negligent installation of a microwave transmitter. John D. McGavin, whom Atlantic had employed to defend Multicomm and Rask, testified that, during the course of the litigation, he was unsuccessful in repeated attempts to contact Rask by telephone, letter, and facsimile.

Based on concerns about Rask's lack of cooperation, Atlantic sent Rask a "reservation of rights" letter, reminding him of his obligation under the insurance policy to cooperate with McGavin. McGavin also stated that he warned Rask about the possibility of sanctions, including the entry of a default judgment against him, if he failed to cooperate with Atlantic.

After McGavin was unsuccessful in obtaining Rask's appearance for a de bene esse deposition, the trial court entered an order compelling Rask to appear for a deposition on April 26, 1993, in Salt Lake City, Utah, where Rask resided and conducted

business.  Four days before that deposition, Rask sent McGavin a facsimile stating that a close family member, who actually was the father of Rask's close friend, had suffered a stroke, and that Rask would not be available to attend the deposition if that person died.  McGavin repeatedly tried to contact Rask by telephone, but Rask failed to return his messages.

Rask sent another facsimile to McGavin on April 23, 1993, stating that the "family member" had passed away, and that he would have to reschedule the deposition for April 28, 1993.  McGavin testified that Rask did not communicate further with him about the deposition, except to send McGavin a copy of a facsimile directed to Angstadt's counsel, stating that Rask had advised McGavin that he would not be available for deposition on April 26, 1993.

Alicia L. Summers, McGavin's associate, testified that she informed Angstadt's counsel that Rask would be available for deposition on April 28, 1993, but not on April 26, 1993.  Angstadt's counsel responded that he would attend the Salt Lake City deposition at Multicomm's premises on April 26, 1993 as scheduled.  Angstadt's counsel informed McGavin that if the funeral was held at the deposition time of 2:00 p.m., Angstadt could accommodate Rask at another available time that day.

Summers then informed Angstadt's counsel that any attempt to enter Multicomm's premises on April 26, 1993 would constitute a trespass which would be reported to the "appropriate

authorities."  Both McGavin and Summers denied that they had informed Rask or Multicomm that the deposition had been rescheduled for April 28, 1993.

Rask testified that a week before the April 26, 1993 deposition, the father of his close friend suffered a stroke. Rask stated that he sent two facsimiles to McGavin purporting to cancel the deposition because the funeral was set for 9:30 a.m. on the morning of April 26, 1993.  Rask testified that he would have been available to attend the deposition after the funeral on April 26, 1993, but that he believed the deposition had been canceled, because he learned that McGavin had directed Multicomm to notify the authorities if Angstadt's counsel attempted to enter the premises.  However, Rask conceded that he never attempted to contact McGavin to determine whether the deposition had been rescheduled.[3]

After hearing the above evidence, the jury concluded that

---

[3]As a result of Rask's failure to attend the April 26, 1993 deposition, the trial court, in the underlying tort action, granted Angstadt a default judgment on the issue of liability. In a bench trial on the issue of damages, Angstadt recovered the $2,000,000 judgment at issue against Multicomm and Rask.  Shortly after the judgment was entered, National Union Fire Insurance Company paid Angstadt $650,000 to settle its obligation to provide excess coverage.

Rask did not willfully fail to cooperate by failing to attend the April 26, 1993 deposition.  Atlantic requested the chancellor to enter judgment in its favor on the basis that the jury verdict was merely advisory, or in the alternative, on the ground that the verdict was contrary to the evidence.

The chancellor held that since the jury was impaneled to decide an issue out of chancery, the verdict was advisory and non-binding.  The chancellor also ruled that the verdict was contrary to the law and the evidence because "there is no question . . . on the facts that the insured willfully failed to cooperate."  The chancellor ruled that there was no valid explanation for Rask's failure to attend the 2:00 p.m. deposition, since he testified that the funeral was held at 9:30 a.m.

The chancellor stated that Rask "made a deliberate, knowing, calculated and well-advised choice to not attend that deposition."  The chancellor then entered judgment for Atlantic, declaring that Atlantic was not obligated to indemnify Multicomm or Rask for Angstadt's judgment against them.

On appeal, the defendants argue that they had a statutory and constitutional right to a jury trial, and that the chancellor abused his discretion in refusing to transfer the case for trial at law.  In the alternative, the defendants contend that, if the chancellor did not abuse his discretion in refusing to transfer the case, he erred in ruling that the jury verdict was advisory.

- 6 -

Finally, the defendants argue that, if this Court determines that the jury properly was presented an issue out of chancery, judgment should have been entered in accordance with the verdict because it was supported by Rask's testimony that he believed the deposition had been rescheduled.  We disagree with the defendants.

Initially, we will not consider the issue whether the chancellor abused his discretion in refusing to transfer the case, because the defendants did not assign error to this ruling in their first appeal, and the issue was not raised again after remand of the case.  We will only consider errors timely assigned in a petition for appeal.  See Rule 5:17(c).

We also conclude that the defendants have waived the argument that they were entitled to a binding jury verdict in this declaratory judgment suit.  The defendants failed to state an objection at the time the chancellor announced that he was impanelling the jury to decide an issue out of chancery and asked the parties to frame the issue.  Further, when the chancellor asked the defendants' counsel how many questions should be included in the issue out of chancery, the defendants' counsel did not object to the use of that procedure, but discussed the substantive questions involved.  Thus, we do not consider the merits of this argument.  Rule 5:25.

In addition, the defendants did not file a plea in equity, which would have entitled them to a jury trial under Code § 8.01-

336(D).  A plea in equity is a discrete form of defensive pleading that does not address the merits of the complaint, but raises a single issue of fact which, if proved, constitutes an absolute defense to the suit.  Nelms v. Nelms, 236 Va. 281, 289, 374 S.E.2d 4, 9 (1988); Bolling v. General Motors Acceptance Corp., 204 Va. 4, 8, 129 S.E.2d 54, 56 (1963).  A jury verdict returned under a plea in equity is as binding and conclusive on the factual issue submitted as a jury verdict in an action at law.  Stanardsville Volunteer Fire Co. v. Berry, 229 Va. 578, 587, 331 S.E.2d 466, 471-72 (1985).

We also find no merit in the defendants' argument that they were entitled to a binding jury verdict under Code § 8.01-188.  That section addresses only the form in which an issue of fact may be submitted to a jury, and does not provide a party in a declaratory judgment suit a separate right to a binding jury verdict.

We next consider the defendants' argument that the chancellor erred in entering judgment contrary to the jury verdict.  A chancellor has discretionary authority under Code § 8.01-336(E) to impanel a jury to decide an issue out of chancery.  The jury verdict is advisory or persuasive, and serves to inform the conscience of the chancellor.  Bowers v. Westvaco Corp., 244 Va. 139, 147, 419 S.E.2d 661, 666 (1992); Stanardsville, 229 Va. at 587, 331 S.E.2d at 471; Harris v. Citizens Bank & Trust Co., 172 Va. 111, 133, 200 S.E. 652, 660

- 8 -

(1939).  However, as we stated in <u>DeJarnette v. Brooks Lumber</u>

<u>Company</u>, 199 Va. 18, 97 S.E.2d 750 (1957),

> [w]hen the chancellor has decided the case himself,
> despite the verdict of the jury and contrary to their
> findings, on appeal the duty devolves upon the
> appellate court to examine the evidence and if in its
> opinion the preponderance thereof is with the verdict
> the decree will be reversed and final judgment entered
> in accordance with the verdict.  But where the evidence
> preponderates in support of the judgment of the
> chancellor his judgment will be upheld.

<u>Id.</u> at 21, 97 S.E.2d at 752; <u>see also</u> <u>Fitchette v. Cape Charles</u>

<u>Bank</u>, 146 Va. 715, 733, 133 S.E. 492, 494 (1926).

In determining whether a preponderance of the evidence supports the chancellor's judgment, we first note that Atlantic's insurance policy does not define the word "willful."  Although we previously have addressed the issue whether an insured has willfully failed to cooperate with its insurer, <u>see, e.g.</u>, <u>State Farm Insurance Company v. Davies</u>, 226 Va. 310, 310 S.E.2d 167 (1983); <u>Cooper v. Employers Mutual Liability Insurance Company</u>, 199 Va. 908, 10 S.E.2d 210 (1958), we have not defined the word "willful" in the context of a "cooperation clause" in an insurance contract.  However, in a civil action involving a claim that an attorney "willfully" violated a provision of the Virginia Freedom of Information Act, Code §§ 2.1-340 to -346.1, we stated that conduct is "willful" when it is intentional.  <u>RF&P Corp. v. Little</u>, 247 Va. 309, 320, 440 S.E.2d 908, 915 (1994).  The word "willful" also has been defined, in a non-criminal law context, as denoting an act which is intentional, knowing, or voluntary.

See United States v. Murdock, 290 U.S. 389, 394 (1933).  We apply these definitions to our review of the evidence in the present case.

We conclude that a preponderance of the evidence supports the chancellor's judgment that Rask willfully failed to cooperate with Atlantic by failing to attend the April 26, 1993 deposition.  Atlantic had warned Rask of his obligation under the insurance policy to cooperate with McGavin.  Moreover, McGavin had informed Rask that his failure to appear at a deposition could result in the entry of a default judgment against him.  Despite these prior warnings, Rask intentionally refused to appear that afternoon, although the funeral for his friend's father had been held at 9:30 a.m.

While Rask testified that he thought the deposition had been rescheduled, he did not attempt to contact McGavin to confirm that fact.  He refused to return McGavin's telephone calls, although he was aware that McGavin was trying to reach him to discuss the situation.  Rask also admitted that he had not received any confirmation from McGavin that Atlantic had agreed to reschedule the deposition.  Therefore, we conclude the chancellor did not err in entering judgment, contrary to the jury verdict, that Rask's willful failure to cooperate with Atlantic relieved Atlantic of any duty under its policy with Rask and Multicomm to indemnify Rask or Multicomm for the $2,000,000 judgment entered in favor of Angstadt against them.

For these reasons, we will affirm the chancellor's judgment.

Affirmed.