## CIRCUIT COURT OF FAIRFAX COUNTY

Builders Floor
Service, Inc.

v.

Curtis L. Kirby
and Coleman Floor Co.

September 27, 2002

Case No. (Chancery) 176076

BY JUDGE R. TERRENCE NEY

This matter came before the Court on September 6, 2002, on Complainant's Builders Floor Service, Inc.'s Motion for Trial by Jury in this equitable action.

### Facts

Builders Floor Service, Inc. ("Builders Floor") is a Virginia corporation engaged in the floor covering and carpeting business. In June 1999, Builders Floor hired Curtis L. Kirby to work as a sales representative. Shortly after his employment commenced, Kirby entered into an Employment Agreement[1] with Builders Floor, which set out the specific terms and conditions of his employment.

In October 2000, Kirby was promoted to the position of Sales Manager. As Sales Manager, Kirby was responsible for supervising Builders Floor's day-to-day sales operations. Shortly after assuming this new position, Kirby and Builders Floor entered into a new Employment Agreement ("the

---

[1] A copy of the Employment Agreement dated June 16, 1999, was not included as an exhibit but is referenced in the Employment Agreement dated October 1, 2000.

Agreement"),[2] which superceded the Employment Agreement dated June 16, 1999. The Agreement again set out the terms and conditions of Kirby's employment as Sales Manager, including his compensation. See Exhibit A, ¶ 3. The Agreement also included a provision prohibiting Kirby from engaging in any business activity outside that of Builders Floor during the course of his employment without the express written consent of the Company. *Id.*, ¶ 5. Additionally, the Agreement contained a covenant not to compete, a provision that was to survive any termination of Kirby's employment with Builders Floor. *Id.*, ¶ 9.

Paragraph 9(a) of the Agreement provides that Builders Floor's "customers shall be regarded as confidential and shall not be disclosed to any other person or used in any way that would be detrimental to the Company's business...." Paragraph 9(c) further states that the "employee covenants and agrees that, during the term of this Agreement and for a period of twelve (12) months after the termination of Employee's employment for any reason, or from the date of a final order enforcing this non-competition restriction by a court of competent jurisdiction ... he will not, directly or indirectly ... provide goods or services for the installation of floor coverings" to any current or prior customer of Builders Floor. Paragraph 9(d) prohibits Mr. Kirby from attempting to hire any Builders Floor employees for any outside business venture.

Kirby remained employed as Sales Manager until August 9, 2001, when Builders Floor, upon its belief that Kirby had willfully violated the terms of his Employment Agreement, terminated his employment. See Bill of Complaint, ¶¶ 19-25, 28-31, 36.

On December 21, 2001, Builders Floor filed suit in the Fairfax County Circuit Court against Kirby, as well as Coleman Floor Company,[3] seeking equitable relief and damages[4] arising out of Kirby's "intentional misconduct

---

[2] The October 1, 2000, Employment Agreement is attached as *Exhibit A* to the Bill of Complaint. The signature line on the last page indicates that Mr. Kirby signed the Agreement on November 9, 2000.

[3] Complainant alleges in its Bill of Complaint that Kirby began working for Coleman Floor Company (a "direct competitor" also engaged in floor contractor business) immediately after his termination from Builders Floor. Complainant further alleges, among other things, that both Kirby and Coleman Floor Company made improper use of Builders Floor's confidential and proprietary information resulting in Coleman's being awarded contracts from Builders Floor's customers.

[4] Out of eight separate prayers for relief, Complainant's prayers for injunctive relief in this matter constitute only two. The remaining prayers are for compensatory and punitive damages.

directed at Builders Floor ... and participated in/encouraged by Coleman Floor Company." Complainant's Motion for Jury Trial, ¶ 1. In its seven-count bill of complaint, Builder's Floor alleged the following against either one or both Defendants: (1) Conversion; (2) Breach of Employment Agreement; (3) Injunctive Relief; (4) Misappropriation of Trade Secrets; (5) Tortious Interference; (6) Breach of Duty of Loyalty; and (7) Breach of Fiduciary Duty.

Defendants Kirby and Coleman Floor Company timely filed their Answers to the Bill of Complaint, denying all allegations. The matter is set for a three-day non-jury trial, to begin on October 21, 2002.

On August 23, 2002, Builders Floor filed a motion requesting a trial by jury with respect to its law claims. On August 30, 2002, Kirby and Coleman Floor Company filed a Memorandum in Opposition asserting that Builders Floor, by electing to file its suit in equity, waived its right to a jury trial.

## *Analysis*

The issue presented is whether Builders Floor, by instituting these proceedings in equity, waived its right to a jury trial as to its legal claims, which constitute the majority of claims alleged.

The distinction between courts of law and courts of equity is firmly rooted in our nation's judicial history. Based on a system of rules and principles that originated in England, equitable justice developed as an alternative to the harsh rules of common law. As the term "equity" denotes the spirit of and habit of fairness, equitable rules were based on what was fair in a particular situation. One seeking relief under the equitable system of rules sought such relief in courts of equity rather than courts of law.

Law and equity were "fused" in England by the Judicature Act of 1873. Jill E. Martin, *Modern Equity* (14th ed. 1993), p. 3. That Act created "the Supreme Court of Judicature with a High Court divided into Divisions known as the Queen's Bench Division, Chancery Division and ... the Family Division. ... Each Division exercises both legal and equitable jurisdiction." *Id.* at 15. The design was for a court of complete jurisdiction. Any potential conflicts between the rules of law and equity were settled by a provision in the Act that the rules of equity were to prevail. *Id.* at 16.

Today in the United States, although most of the fifty states and the federal system have abolished the distinctions between law and equity,[5]

---

[5] Although most states have merged the two jurisdictions, at least six states, Alabama, Iowa, Tennessee, Pennsylvania, Virginia, and Michigan, still maintain separate courts or dockets for actions filed at law and actions filed in equity.

Virginia continues to maintain a division between law and equity jurisdiction. In Virginia, the two jurisdictions of law and equity are in fact vested in the same court, though exercised separately. The procedure in courts of chancery in Virginia was initially based on that prevailing in the High Court of Chancery in England at the time the colonies declared their independence. Edwin B. Meade, *Lile's Equity Pleading and Practice*, § 4 (3d ed. 1952). It has since been substantially modified by statute, judicial decisions, and the Rules of the Supreme Court of Virginia. *Id.*

Virginia statute declares that the circuit courts of this state "shall have original and general jurisdiction of all cases in chancery and civil cases at law." See Va. Code Ann. § 17.1-123. Although the same courts administer the two jurisdictions, it has been said that "the two streams of jurisdiction, though they run in the same channel, run side by side, and do not mingle their waters." See Martin, *Modern Equity, supra*, at 21. That is, equity suits are instituted and conducted according to equity practice, and actions at law according to the rules for actions at law.[6] The records are kept distinct, and there is no further mingling of the two systems other than the administration of both by the same judicial machinery. See Lile, *supra*, § 3.

The functions and policies of the two systems are as dissimilar as are their origin and practice. The purpose of every action at law is to fix a legal liability, *and the same liability*, on every defendant, and in favor of every plaintiff, where there are more than one of either. See Lile, *supra*, § 69. That one should be made a party defendant at law, for any purpose other than to assert a hostile claim against him, is inconceivable, and therefore unknown in its practice. See Lile, *supra*, § 67. The circumstance that the judgment does not settle the whole controversy plays no part in the proceeding at law, which ignores equitable rights.[7]

On the other hand, courts of equity sit not merely to decide disputed questions of legal right and legal liability. See Lile, *supra*, § 67. Rather, the

---

[6] Different sets of rules apply depending on the type of action instituted. But years of practice under both sets of rules in the same courts have molded the Virginia legal system into an integral whole.

[7] See Lile, *supra*, § 69. Upon judgment, the court of law, as a rule, takes no part in securing to the plaintiff the fruition of his judgment. The successful plaintiff must, in general, rely on the assistance of the sheriff to put him in possession of the money or property to which the judgment entitles him. Likewise, a court of law plays no part in the circumstance that a particular defendant, as a result of the liability fixed upon him by the judgment, may have to undertake other litigation with the plaintiff or with his co-defendants before the entire subject matter of the controversy is resolved.

goal of the equity courts is to make a *complete* disposition of the subject matter of the litigation and, to that end, to settle once and for all the equitable as well as the legal rights of every person who has an interest in the subject matter, so that every person may be bound by the decree and no further litigation among the parties will necessary or permissible. *Id.* Courts of equity can render the administration of justice more completely by affording relief where the courts of law are incompetent to give it, or to give it with effect, or by exercising branches of jurisdiction independently of them.

In order that a cause may come within the scope of the equity jurisdiction, one of two alternatives is essential: either the primary right, estate, or interest to be maintained, or the violation of which furnishes the cause of action, must be equitable rather than legal; or the remedy granted must be in its nature purely equitable, or if it be a remedy which may also be given by a court of law, it must be one which, under the facts and circumstances of the case, can only be made complete and adequate through equitable modes of procedure. *Norback v. Board of Directors of Church Extension Society*, 84 Utah 506, 37 P.2d 339 (1934).

In seeking "complete" relief in the present case, Builders Floor instituted these proceedings on the equity side of court in order to obtain both injunctive and monetary relief for the alleged breach of the Employment Agreement by Kirby, as well as for the alleged tortious interference with the same agreement by Defendants Kirby and Coleman Floor Company. Now, since first instituting these proceedings, and less than two months prior to trial, Builders Floor asserts that it is entitled to a jury trial on its legal claims, which constitute most of the Complainant's case. See generally, Bill of Complaint.

In support of its argument, Builders Floor relies on the Seventh Amendment of the United States Constitution, Article I, § 11, of the Virginia Constitution, and *Simmons v. Avisco*, 350 F.2d 1012 (4th Cir. 1965). In *Simmons*, the plaintiff filed suit pursuant to § 102 of the Labor-Management Reporting and Disclosure Act in the United States District Court for the Eastern District of Virginia seeking an injunction to cause restoration of his union membership and also damages resulting from his suspension. One of the issues before the United States Court of Appeals was whether the District Court erred in permitting the case to be tried by jury where there were both legal and equitable causes of action. The Court of Appeals held that the defendant's objection to a trial by jury was without merit. The Court reasoned that where "issues underlying equitable and legal causes of action have been exactly the same, the Supreme Court [of the United States] has been careful to preserve a litigant's right to jury trial on the factual issues, even where a

stronger basis was presented for equitable than for legal relief." *Simmons v. Avisco*, 350 F.2d 1012, 1018 (4th Cir. 1965).

Although the *Simmons* court ruled that the jury determination of damages did not affect the court's equity jurisdiction, Builders Floor's reliance on *Simmons* is misplaced. *Simmons* is not based on Virginia law, but instead rests on law from other jurisdictions where the distinctions between law and equity have been abolished. *Simmons* relied on a United States Court of Appeals decision from the Fifth Circuit, as well as another Supreme Court decision, neither of which based its holdings on Virginia law, which draws a distinction between law and equity. See *Simmons v. Avisco*, 350 F.2d 1012, 1018 (4th Cir. 1965), citing *Dairy Queen v. Wood*, 369 U.S. 469, 473, 8 L. Ed. 2d 44, 82 S. Ct. 894 (1962), and *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 491 (5th Cir. 1961).

The Constitution of Virginia, Art. I, § 11, provides in pertinent part: "That in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred." This provision is inapplicable, however, to those proceedings in which there was no right to jury trial when the Virginia Constitution was adopted. *Stanardsville Volunteer Fire Co. v. Berry*, 229 Va. 578, 583, 331 S.E.2d 466, 469 (1985). It has no application to ordinary suits in chancery, but is only applicable to common-law actions seeking damages. *Id. See also* Va. Code Ann. § 8.01-336 (2002) (right to trial by jury).

That being said, when a party seeks monetary damages caused by another's tortious conduct, he must bring his action on the law side of the court, and either party has a right to a jury trial. See *Wright v. Castles*, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986), citing *Stanardsville Vol. Fire Co. v. Berry*, 229 Va. 578, 583, 331 S.E.2d 466, 469 (1985); *O'Brien v. Snow*, 215 Va. 403, 405, 210 S.E.2d 165, 167 (1974) (plaintiffs were entitled to a trial by jury on their punitive damage claim); Va. Code Ann. § 8.01-336(A) (2002). On the other hand, when a party seeks injunctive relief, he must sue in equity. *Id.* In equity, a litigant has no constitutional right to trial by jury, *Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 263-64, 108 S.E. 15, 21 (1921), and, absent a plea in equity,[8] no statutory right.[9] *Wright v. Castles*, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986).

---

[8] A plea is a discrete form of a defensive pleading which sets forth a single dispositive state of facts which, if proven, would provide a defendant an absolute defense to a plaintiff's claim. See *Nelms v. Nelms*, 236 Va. 281, 374 S.E.2d 4 (1988). Only the defendant can set up such a plea (either in a separate pleading called a "plea

Pursuant to § 8.01-281 of the Virginia Code and Virginia Supreme Court Rule 1:4(k), the Complainant did properly plead both its legal and equitable claims in one suit.[10] But neither provision authorizes the assertion of different *rights of action, with varying procedural rights*, in the same proceeding. *Packett v. Herbert*, 237 Va. 422, 424, 377 S.E.2d 438, 441 (1989). In other words, neither provision authorizes the joining of actions at law and actions in equity into one suit with a jury trial. To interpret otherwise would eviscerate the distinction between law and equity and bring the Commonwealth of Virginia one step closer to a unified system, a result this Court declines to produce.

In summary, a fundamental difference in procedural rights between actions at law and equity is the right to a jury trial. In actions filed at law, the judge is required to order a jury trial upon the plaintiff's request. *Stanardsville Vol. Fire Co. v. Berry*, 229 Va. 578, 583, 331 S.E.2d 466, 469-70 (1985). In equity suits, there is no absolute right to a jury trial on the issue of damages; the matter is discretionary, unless the defendant files a plea. See *Wright v. Castles*, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986). See also Va. Code Ann. § 8.01-336(D). Under this section of the Code, the chancellor has no discretion over awarding the jury trial. The statute is mandatory that "either party may have such issue tried by jury," and the verdict when rendered stands. Unlike an issue out of chancery, the court cannot disregard the jury's verdict. The verdict is not to merely inform the conscience of the chancellor, but to determine the issue of the fact raised by the plea.

Here, Builders Floor has neither a constitutional nor a statutory right to a jury trial. First, no constitutional right to a jury exists because Builders Floor instituted this suit in equity seeking injunctive relief. Second, as the Defendants did not raise any pleas in equity as a defense, no statutory right to a jury trial exists either. Builders Floor, in choosing to file its law claims with its equitable claims in equity, has waived any right to a jury trial on its legal claims.

The absence of a right to a jury trial in equity notwithstanding, a party may request, or the chancellor may refer, an issue out of chancery.[11] The

---

in equity," or by separately stating such a plea in its answer). A plaintiff cannot set up such a plea, thereby giving itself a jury trial right.

[9] See Va. Code Ann. § 8.01-336(D).

[10] See Va. Code Ann. § 8.01-281 (2002) and Virginia Supreme Court Rule 1:4(k), both of which provide for the assertion of alternative theories of recovery in an equity suit or in an action at law, whether based on legal or equitable grounds.

[11] Edwin B. Meade, *Lile's Equity Pleading and Practice*, §§ 254, 256 (3d ed. 1952). See also Va. Code Ann. § 8.01-336(E) (2202). In chancery, where the testimony is "so conflicting, or the circumstances of the case are otherwise such, that

directing of such an issue is a matter of judicial discretion. *Eastern Finance Co. v. Gordon*, 179 Va. 674, 20 S.E.2d 522 (1942). A party's right to have an issue out of chancery is based upon the power of equity, once it has acquired jurisdiction of a case for one purpose, to retain it for all purposes. *Dobie v. Sears Roebuck Co.*, 164 Va. 464, 474, 180 S.E. 289, 293 (1935). In the exercise of this power, equity can and does afford complete relief, including the award of damages in proper cases, namely, where a party is seeking both legal and equitable relief. *Id.*

This Court, however, finds no reason to refer any of the legal issues out of chancery. Nor has any party made such a request.

This Court finds that to grant the Complainant a trial by jury as to its legal claims in this equity suit would be to blur, if not obliterate, the line between law and equity. The Supreme Court of Virginia has on more than one occasion declined the invitation to abolish the traditional and marked distinction between law and chancery. See *Wright v. Castles*, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986); see also *Packett v. Herbert*, 237 Va. 422, 377 S.E.2d 438 (1989). So, too, does this Court.

## Conclusion

The marked distinction between law and chancery, a product of the English system, continues to exist in the Commonwealth. In deciding whether to file an action at law, in equity, or both, a person needs to consider whether he or she is willing to give up any assured right to a jury for the legal aspects of his or her claim. Here the Court finds that Complainant, Builders Floor, by choosing to file its legal claims in equity rather than at law, effectively waived its right to a jury trial on those claims.

---

the chancellor is in doubt as to the truth of a particular issue of fact," an issue of fact may be referred to a jury for a verdict, to "aid the chancellor's conscience." The effect of such a verdict is merely advisory and is not binding on the chancellor.